IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| **CAREER COUNSELING, INC**. d/b/a **SNELLING STAFFING SERVICES**, a South Carolina corporation, individually And as the representative of a class of Similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>**AMERIFACTORS FINANCIAL GROUP, LLC and JOHN DOES 1-5,**<br><br>Defendants. | **CASE NO.: 3:16-cv-3013-JMC**<br>**CLASS ACTION** |

**AMERIFACTORS FINANCIAL GROUP, LLC'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR ENTRY OF COURT ORDER**

Defendant AmeriFactors Financial Group, LLC ("AmeriFactors") submits this response in opposition to Plaintiff's Motion for Entry of a Court Order to Pursue Immediate Discovery Compliance from Third-Party Phone Carriers (the "Motion") (Dkt. 172).

**I.     INTRODUCTION**

Plaintiff's Motion seeks to compel more than 300 third parties to respond to subpoenas (the "Subpoena"), notwithstanding any objections such third parties may have made, without providing notice of this Motion to the impacted third parties. This defect, alone, renders the Motion procedurally improper and supports denying it.

In addition, allowing Plaintiff to enforce compliance with hundreds of Subpoenas at this late stage of discovery will significantly delay the resolution of this case. While AmeriFactors agreed to a modest extension of the discovery deadline to complete depositions of witnesses already noticed, it is *not* agreeable to further extending these deadlines to permit an avalanche of

third-party discovery that was not obtained or appropriately pursued within the timeframe this Court has provided.

And, there is little benefit to be gained by full compliance with Plaintiff's Subpoenas, to which carriers have objected, including on the basis of burden and relevance. While Plaintiff inexplicably does not say so in its Motion (and rather represents that the Subpoenas were served for a different purpose), it appears that Plaintiff is attempting to use these Subpoenas to answer the question of whether a subscriber to a particular phone number used an online fax provider to receive faxes. But, as two Subpoena recipients have already made clear, telecommunications carriers are unable to answer this question. Indeed, telecommunications providers' records cannot be used to show whether a particular subscriber used an online or computerized fax solution because any subscriber could use such a feature even though the carrier itself did not provide the service. Accordingly, Plaintiff's proposed exercise only stands to delay matters and impose a burden on hundreds of third party telecommunications carriers.

The Motion should be denied.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

***Background Regarding Plaintiff's Claims and Proceedings Before the Federal Communications Commission ("FCC").*** Plaintiff filed this action on September 2, 2016. (Dkt. No. 1.) In its First Amended Class Action Complaint, Plaintiff alleges that on June 28, 2016, AmeriFactors sent an unsolicited facsimile (the "Fax") to Plaintiff and other members of the following putative class:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, and (3) from which Defendants did not have prior express invitation or permission, or (4) which did not display a proper opt-out notice.

2

(*Id.* ¶ 19.)

In September 2018, this Court stayed this action pending the resolution of AmeriFactors' Petition for Declaratory Relief, which was filed on July 13, 2017, before the FCC. (Dkt. No. 88.) As this Court acknowledged, the FCC's then-anticipated ruling "could be potentially dispositive of Plaintiff's class claims if an individual case by case analysis will be required to determine whether the putative class members received the complained of facsimiles on a telephone facsimile machine over a regular telephone line or on a computer or some other device over the internet." (*Id.*) On December 9, 2019, the FCC issued a Declaratory Ruling on AmeriFactors' Petition ("FCC Ruling") holding, in pertinent part:

> By this declaratory ruling, we make clear that an online fax service that effectively receives faxes "sent as an email over the internet" and is not itself "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper" *is not a "telephone facsimile machine" and thus falls outside the scope of the statutory prohibition.*

(Dkt. 98, Ex. 1, ¶ 3) (emphasis added). The FCC reached this conclusion because "online fax services differ in critical ways from the traditional faxes sent to telephone facsimile machines Congress addressed in the TCPA," because these devices "use paper and ink only when the recipient chooses to print it using their own separately provided equipment" and also do not "occupy[] the recipient's fax machine so it is unavailable for other transmissions." *Id.*, ¶ 13. AmeriFactors' position is that the FCC Ruling is dispositive of Plaintiff's class claims, while Plaintiff argues it is not.

***The Current Discovery Schedule.*** Following the FCC Ruling, on January 8, 2020, this Court lifted the stay. (Dkt. 102.) Thereafter, at the parties' request, the Court further stayed the case, including due to the challenges presented by COVID-19. (Dkt. 124.) On June 23, 2020,

the Court lifted the stay and entered an Amended Conference and Scheduling Order, setting forth a revised case schedule with a deadline of January 15, 2021 to conclude non-expert discovery. (Dkt. 128.) On January 5, 2021, the Court extended fact discovery until February 26, 2021. (Dkt. 175.) Thus, under the recently amended schedule, the parties are poised to complete fact discovery early this year.

*Overview of Pertinent Discovery.* With respect to the substantive discovery productions, as pertinent to this Motion, two files were produced that purport to represent transmission data for the Fax sent by third party fax providers on June 24, 2016 and June 28, 2016, respectively (the "Fax Logs"). (Expert Report of Robert Biggerstaff, ¶¶ 13-15.) Plaintiff's expert avers that the Fax Logs reflect that the Fax was successfully received by 58,944 unique phone numbers. (*Id.*, ¶ 15.) A target list (the "Target List") used by one of the fax providers was also produced in discovery. (Declaration of Lauri Mazzuchetti ("Mazzuchetti Decl."), ¶ 3.) That Target List includes the business name, an individual contact name and gender, a mailing address, telephone number and purported facsimile number of each intended recipient identified in the Fax Logs. (*Id.*)

*The 326 Third Party Subpoenas at Issue.* Between September 16, 2020 and the December 22, 2020, Plaintiff served at least 326 subpoenas (the "Subpoenas") on third party telecommunications providers, requesting the following as to a lengthy list of phone numbers:

> 1.   For each telephone number on the list for the date listed, identify whether or not you provided online fax service to the subscriber of that telephone number.
>
> 2.   For each telephone number on the attached list for the date listed, provide the name and address of the subscriber.

(Mazzuchetti Decl. ¶¶ 4-5; Ex. A.) Each Subpoena included a list of phone numbers; in the case of some Subpoena recipients, thousands of numbers are at issue. (*Id.* ¶ 6.) Plaintiff represents in its Motion that it served these Subpoenas "[i]n order to compile a list of subscriber names and

4

addresses identifying class members." (Mot. at ¶ 4; *see also id.* at ¶ 7.) It appears, however, that the true purpose of the hundreds of Subpoenas is to address the FCC Ruling by attempting to determine whether or not the Subpoenaed party provided "online fax service to the subscriber of that telephone number." (Mazzuchetti Decl. Ex. A.)

*Plaintiff Has Failed To Provide AmeriFactors with the Responses and Objections to the Subpoenas that are Pertinent To This Motion.*  Since Plaintiff began serving the hundreds of Subpoenas back in September, counsel for AmeriFactors had requested that Plaintiff produce to AmeriFactors any subpoena responses, including objections, that it received. (Mazzuchetti Decl. ¶¶ 7, 9, Ex. D.) To date, AmeriFactors has received fewer than five responses to the Subpoenas. (*Id.* ¶ 10.)

*Verizon's September 23, 2020 Subpoena Response.*  On September 28, 2020, Plaintiff's counsel sent to AmeriFactors' counsel Verizon's Subpoena response. (Mazzuchetti Decl. ¶ 7.) Verizon's response, dated September 24, 2020, objects to the Subpoena on eleven (11) separate grounds, including undue burden and relevance. (*Id.* Ex. B.) In addition, Verizon states that "Verizon does not have information available to it to determine whether the customer associated with the telephone numbers used the number with a fax or online service. Verizon therefore has no information responsive to this request." (*Id.*)

*Comcast's October 2020 Subpoena Response*.  On October 30, 2020, AmeriFactors received Comcast Corp.'s Subpoena response, which stated it was a "further" objection referencing an "initial" objection of October 14, 2020. (Mazzuchetti Decl. Ex. C.) Comcast's counsel has advised that Plaintiff's counsel asked his client to provide a declaration that Comcast did not provide online fax services during the time period in question. (Mazzuchetti Decl. ¶ 8.) It is AmeriFactors' understanding that if Comcast provided such declaration, Plaintiff's counsel

will not require that third party to provide the name and address of each subscriber—the very reason that Plaintiff had represented to this Court that it had served the Subpoenas.  (*Id.*)  Comcast, like Verizon, has also indicated that even if it provided such a declaration, it would not be able to answer the ultimate question of whether the subscriber at issue had used an online or computerized fax solution because any subscriber could use such a feature even though the carrier itself did not provide the service.  (*Id.*)

*Plaintiff Has Failed To Provide The Objections and Subpoena Responses That It Received, Despite Agreeing to Do So.*  Having received some of the Subpoena responses, including Verizon's September 24, 2020 objection, AmeriFactors reasonably believed that Plaintiff's counsel had been providing to it the responses and objections to the Subpoenas as it received them.  (*Id.*, ¶ 9.)  Given that months had passed and that it had not received additional Subpoena responses or objections from Plaintiff, coupled with the approaching end of fact discovery, AmeriFactors reasonably assumed that Plaintiff was not pursuing the Subpoenas.

According to Plaintiff, it has served 138 of the Subpoenas in either September 2020 or early October 2020, and 185 Subpoenas in November 2020.  (*Id.*, ¶ 4.)  AmeriFactors was surprised to learn from Plaintiff on December 17, 2020—when Plaintiff's counsel first reached out to ask for AmeriFactors' consent to the instant Motion—that numerous other carriers had objected to the Subpoenas, including on privacy grounds and under the Cable Communications Policy Act of 1984 (the "Act").  (*Id.*, ¶ 9.)  On December 23, 2020, counsel for AmeriFactors again asked—as reflected in an email—for a complete set of Subpoena responses, including any objections received.  (*See* Mazzuchetti Decl. ¶ 9, Ex. D.)  Plaintiff's counsel responded that such records were being collected and "converted to a producible form."  (*Id.*, Ex. D.)  Plaintiff, however, still has yet to provide to AmeriFactors the promised, additional Subpoena responses

and objections that purportedly serve as the basis for its Motion.[1] (*Id.*, ¶ 10.) Indeed, Plaintiff claims in its Motion that "Multiple Phone Carriers have responded [to the Subpoenas] requiring a court order pursuant to 47 U.S.C. 551 to release subscriber information," while failing to provide such responses to AmeriFactors. (Mot. at ¶ 5.)

AmeriFactors is concerned that if it now receives eleventh-hour declarations and/or Subpoena responses for more than 300 providers, the resolution of this case will be significantly and unnecessarily delayed. Given that AmeriFactors has not been provided responses to the Subpoenas in a timely fashion, if AmeriFactors is inundated at this late stage with hundreds of declarations in response to the Subpoenas, AmeriFactors would require additional time to depose any third-parties regarding what any records obtained do—and, more importantly—do not show.

***Plaintiff Filed The Instant Motion Without Identifying Relevant Carrier Objections.*** Plaintiff filed the instant Motion on December 23, 2020—three months after receiving Verizon's objection, two months after receiving Comcast's objection and an unknown period of time after receiving the objections of others. There simply is no justification for Plaintiff's delay, particularly given the fast-approaching discovery deadline. And whatever the justification, it does not warrant avoiding the requirements of due process.

Plaintiff's Motion requests that this Court enter an order compelling each of the more than 300 third parties to substantively respond to the Subpoenas in a matter of days, irrespective of any objections that they may have. (Mot. at ¶ 7.) Specifically, Plaintiff requests an order requiring each of the several hundred third parties to, among other things to: (a) "comply and produce the subpoenaed requested records" "on or before January 13, 2020 (sic);" and (b) provide notice to its subscribers that their identifies are sought by Plaintiff within three (3)

---

[1] To date, AmeriFactors has received only two responses and a single objection that are from September 2020.

calendar days after being served with a subpoena or a copy of this Court's order. In addition, under Plaintiff's proposed form of order, the subscribers who received notice would have "three (3) calendar days from the date of such notice to file any papers contesting the subpoena." (Proposed Form of Order.)

Plaintiff, however, fails to identify which carriers have objected on the basis of the Act and/or whether other objections have been asserted and on what basis.

***Plaintiff Failed To Give Proper Notice of this Motion to Enforce the Subpoenas To The Third Party Recipients.*** As Plaintiff indicated in its Motion, it conferred with counsel for AmeriFactors in late December, and requested that AmeriFactors consent to the instant Motion. AmeriFactors declined to consent for the reasons stated herein. (Mazzuchetti Decl. Ex. D.) Plaintiff does not indicate, however, that it even attempted to meet and confer with any of the Subpoenaed parties.

According to Plaintiff's Certificate of Service, Plaintiff did not serve or otherwise provide notice of this Motion to the more-than 300 Subpoena recipients, including those who may have objected to the Subpoenas, and as to which Plaintiff requests that this Court issue an order commanding compliance.

***Fact Discovery Will Soon Close, And Plaintiff's Motion Will Create Unnecessary Delay***. As indicated, fact discovery is set to close on February 26, 2021. (Dkt. 175.) Plaintiff's rebuttal expert report is due on February 8, 2021. (*Id.*) In the event the Motion is granted, discovery in this case will likely be significantly delayed while Plaintiff attempts to enforce hundreds of third-parties to comply with the Subpoenas. And, given that AmeriFactors has not been provided responses to the Subpoenas in a timely fashion, AmeriFactors may require

8

additional time to depose any third-parties regarding any records obtained. Thus, the Motion poses a significant threat to timeline for resolution of this case.

### III. PLAINTIFF'S MOTION SHOULD BE DENIED

#### A. Plaintiff Failed To Give The Notice Required By Fed. R. Civ. P. 45

Federal Rule of Civil Procedure 45(d)(2)(B)(i) sets forth the procedure by which the Court may compel compliance with a Subpoena. In pertinent part, the Rule provides, "[a]t any time, *on notice to the commanded person*, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Here, Plaintiff has failed to provide the required notice to the "commanded person"—the more than 300 third party telecommunications providers served with the Subpoenas. On this basis alone, Plaintiff's Motion must be denied.

Such notice is particularly important here because at least two Subpoenaed parties have objected that the Subpoenas would impose a heavy burden on them, including to fulfill their duties under the Act and other privacy laws. Common sense suggests that such burden is increased when dealing with former subscribers as to whom the carriers may not have sufficient information to provide notice. It is undisputed that the Act applies to the discovery sought, which includes a section entitled "protection of subscriber privacy," providing that:

> [A] cable operator shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or cable operator, [unless the disclosure is] made pursuant to a court order authorizing such disclosure, *if the subscriber is notified* of such order by the person to whom the order is directed.

47 U.S.C. § 551((c)(1) & (2)(B) (emphasis added). Thus, any order by this Court requiring that the phone carriers comply with the Subpoenas would also amount to an order requiring the

9

phone carriers to undertake the process of providing notice to each subscriber and former subscriber that may be at issue. This process becomes, on its face, burdensome when one considers the volume of subscribers at issue. For example, the Subpoena issued to Comcast seeks information concerning over 5,500 phone numbers for which Comcast would be required to provide notice of the requested disclosure. (Mazzuchetti Decl. Ex. C.) Comcast is just one of the 300 phone providers to which Plaintiff's proposed order would apply.

### B.    Plaintiff's Subpoenas Will Not Resolve the Question of Which Recipients Received the Fax from an Online Fax Service

Under the Federal Rules of Civil Procedure, parties may only obtain discovery that is "proportional to the needs of the case," taking into consideration the "burden or expense of the proposed discovery." Fed. R. Civ. P. 26(b)(1). Similarly, a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense." Fed. R. Civ. P. 45(d)(1). In addition to imposing a high burden, Plaintiff's Subpoenas are unlikely to resolve any issues and are therefore not proportional to the needs of the case.

Plaintiff's Subpoenas will not provide it with the information needed to avoid an individualized investigation into whether each Fax recipient received the fax on a "telephone facsimile machine" as opposed to an online fax service. Plaintiff issued over 300 Subpoenas in an effort to answer this question – the breadth of this discovery alone demonstrates the individualized nature of this inquiry.

Even if obtained, however, this evidence will not identify which Fax recipients, if any, received the Fax on a telephone facsimile machine. First, it is possible that many of the subpoenaed entities do not provide online fax services, so the answer to Subpoena question number could be a guaranteed "no," regardless of whether the subscribers used an online fax service provider or not. Second, several online fax service providers permit their customers to

10

use their carrier's call forwarding feature to forward incoming "calls" to the online fax service. In that case, the telephone carrier would reflect that the customer is a regular subscriber of telephone services, and would have no record that the telephone number is actually used for online fax services.[2]  Both Comcast and Verizon have confirmed this to be true.  Indeed, as Verizon stated, these carriers "do[] not have information available . . . to determine whether the customer associated with the telephone numbers used the number with a fax or online service."[3] (Mazzuchetti Decl. Ex. B.)

Therefore, and to the extent that it is Plaintiff's goal, the 300 Subpoenas will not help it identify a class of persons that received the Fax on a traditional telephone facsimile machine as opposed to using an online or computerized fax solution.

### IV.     THE BURDEN OF PLAINTIFF'S SUBPOENAS OUTWEIGHS THE BENEFIT

As set forth above, there is little benefit to be gained by full compliance with Plaintiff's Subpoenas. Rather, the Subpoenas impose a heavy burden on the phone carriers for compliance and threaten to delay the resolution of this case. Such delay is unwarranted, however, because even if Plaintiff obtained responses to all of the Subpoenas, these responses *still* would not answer the question of whether a subscriber to a particular phone number used an online fax provider to receive faxes.  In any event, the Subpoena recipients should, at the very least, be given the opportunity to be heard on their objections.  Further, while AmeriFactors agreed to a modest extension of the discovery deadline to complete depositions of witnesses already noticed,

---

[2]   A subscriber might use this process if it does not want to give up ownership of its number by porting it to the online fax service instead.

[3]   Plaintiff also cannot identify those Fax recipients that used online fax services by serving subpoenas to each of the hundreds of online fax providers, including those that resell the services of online fax providers like J2 Global, Inc.  An online fax provider cannot identify whether a call comes in directly or is forwarded from another number, so Plaintiff's Subpoenas would not capture a call forwarding scenario.

11

it is *not* agreeable to permitting Plaintiff to pursue third-party discovery that was not obtained or appropriately pursued within the timeframe this Court has provided.

Accordingly, the "burden or expense of the proposed discovery outweighs its likely benefit" and Plaintiff's Subpoenas are not "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). The parties should complete the already-noticed depositions, and proceed to address class certification on the record created.

## V.     THE BURDEN OF PLAINTIFF'S SUBPOENAS OUTWEIGHS THE BENEFIT

For the reasons set forth above, Plaintiff's Motion should be denied.

Dated: January 6, 2021                          Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: s/William H. Latham
   William H. Latham
   Federal Bar No. 5745
   E-Mail: bill.latham@nelsonmullins.com
   Jonathan M. Knicely
   Federal Bar No. 12103
   E-Mail: jonathan.knicely@nelsonmullins.com
   1320 Main Street / 17th Floor
   Post Office Box 11070 (29211-1070)
   Columbia, SC 29201
   (803) 799-2000

**KELLEY DRYE & WARREN LLP**

   Lauri A. Mazzuchetti (*Pro Hac Vice*)
   Whitney M. Smith (*Pro Hac Vice*)
   One Jefferson Road
   Parsippany, New Jersey 07054
   (973) 503-5900
   lmazzuchetti@kelleydrye.com
   wsmith@kelleydrye.com

   *Attorneys for Defendant AmeriFactors Financial Group, LLC*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on January 6, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record below.

/s/ William H. Latham
**WILLIAM H. LATHAM**
Federal Bar No.: 5745
Bill.latham@nelsonmullins.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Meridian, 17th Floor
1320 Main Street
Columbia, SC 29201
Telephone (803) 255-9533
Facsimile (803) 255-9075

*Attorneys for Defendants*
*AmeriFactors Financial Group, LLC*

**ATTORNEY SERVICE LIST**

| | |
|---|---|
| John G. Felder, Jr.<br>McGowan, Hood & Felder, LLC<br>1517 Hampton St.<br>Columbia, SC 29201<br>Email: jfelder@mcgowanhood.com | Brian J. Wanca (*Pro Hac Vice*)<br>Anderson & Wanca<br>3701 Algonquin Road, Suite 500<br>Rolling Meadows, IL 60008<br>Email: bwanca@andersonwanca.com |