**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| CAREER COUNSELING, INC. d/b/a SNELLING STAFFNG SERVICES, individually and as the representative of a class of similarly-situated persons, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 3:16-cv-03013-JMC |
| AMERIFACTORS FINANCIAL GROUP, LLC, and JOHN DOES 1-5, | )<br>)<br>)<br>) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF ITS RENEWED MOTION TO RECONSIDER**

Plaintiff, Career Counseling, Inc., pursuant to Federal Rule of Civil Procedure 54(b) and the Court's Order entered on February 10, 2021 (Doc. 187), submits this memorandum in support of its renewed motion to reconsider the Court's denial (Doc. 177) of Plaintiff's motion for an authorization order under the Cable Communication Policy Act of 1984, 47 U.S.C. § 551, *et seq*. (the "Cable Act") (Doc. 172), and the Court's denial without prejudice of Plaintiff's original motion to reconsider (Doc. 187).

**Introduction**

On February 10, 2021, the Court denied without prejudice Plaintiff's motion to reconsider the denial of Plaintiff's motion for an order under the Cable Act authorizing those phone carrier entities that fall within the Cable Act to release personably identifiable information called for in Plaintiff's phone carrier subpoenas. (Doc. 187). The Court noted that while there were no courts in the Fourth Circuit that had authorized subpoenas under § 551(c)(2)(B) of the Cable Act for nongovernmental entities, courts outside of the Fourth Circuit had done so. After noting that Plaintiff's motion to reconsider was based in part on "manifest injustice," the Court

stated:

> As to whether the January Order results in a manifest injustice, the court observes that nowhere in Plaintiff's Motion is there a statement of how many of the 300+ subpoenaed phone carriers refuse to respond without a court order. Without this information, the court is hesitant to conclude the January Order results in a manifest injustice and, therefore, DENIES WITHOUT PREJUDICE the Motion to Reconsider.

(Doc. 187) (emphasis in original).

In answer to the Court's Order, Plaintiff respectfully submits the information identifying certain phone carrier subpoena respondents that require an order under the Cable Act authorizing disclosure before they will provide the requested information through the Declaration of Ross M. Good, attached hereto as Exhibit 1. Mr. Good has overseen the phone carrier subpoena process. (Good Decl. ¶ 3). Five of these phone carrier subpoena respondents (AT&T, Charter Communications, Frontier Communications, Cox Communications, and Comcast) account for 26,700 out of the 58,944 total fax recipients, or forty-five percent of the putative class—they (and other subpoena respondents) have stated that they will not produce documents responsive to the phone carrier subpoenas without an order authorizing such production from this Court as part of the process set forth in the Cable Act. (Good Decl. ¶¶ 10-15).

The instant TCPA junk fax case is a "purchased list" case—Defendant bought a list identifying more than 100,000 businesses in various SIC codes, including their fax numbers, and then successfully sent (through fax broadcaster WestFax, Inc.) an unsolicited fax advertisement to 58,944 of those business, *i.e.*, the putative class, advertising their "factoring" services. Faced with these incontrovertible facts, Defendant filed a petition with FCC and obtained a ruling from the Consumer and Governmental Affairs Bureau (CGAB) of the FCC, *i.e.*, not the full FCC, which erroneously found "an online fax service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper" is not a

"telephone facsimile machine" and thus falls outside of the statutory prohibition." *See In re Amerifactors Fin. Group, LLC Pet. for Expedited Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, 34 FCC Rcd. 11950, ¶ 3 (CGAB Dec. 9, 2019) ("Amerifactors Bureau Order").[1] As it planned from the beginning, Defendant will attempt to defeat class certification based on the Amerifactors Bureau Order, claiming that which of the 58,944 recipients received the fax via an online fax service will create individual issues and defeat Rule 23(b)(3) predominance.[2]

While it is Plaintiff's position (and Plaintiff will argue in its Rule 23 motion) that the TCPA regulates unsolicited fax advertisements whether they are received on a standalone fax machine or through an online fax service,[3] Plaintiff will also differentiate (should the Court require) which class members received the fax on a standalone fax machine from those which received the fax through an online fax service. However, if Plaintiff is unable to obtain an

---

[1] The Amerifactors Bureau Order is currently on review before the full FCC, as is the CGAB's later decision reliant on that Order, *In re Petition of Joseph T. Ryerson & Son, Inc. for Declaratory Ruling*, CG Docket Nos. 02-278, 05-338, Declaratory Ruling, (CGAB Sept. 4, 2020) ("Ryerson Bureau Order").

[2] In one of several of its motions to stay this case, Defendant claimed to this Court that if the FCC granted its Amerifactors petition, determining which of the 58,000 plus class members received the fax through an online fax service would create individual issues and thereby preclude class certification. (*See* Doc. 50-1, Def.'s Mem. Supp. Mot. Stay, at 2). The Amerifactors Petition itself, contained in Defendant's first motion to stay as Ex. 1, Doc. 50-2, claims Defendant does not ask to "absolve fax senders from all liability under the TCPA," only those it claims were received on a device other than a telephone facsimile machine. (Pet. Doc. 50-2, at 23). Of course, that statement is transparently false. As is evident here, Defendant seeks to wield the Amerifactors Bureau Order for the very purpose of precluding class certification as to all recipients of the fax, thus immunizing itself from liability under the TCPA.

[3] Contrary to the CGAB's Amerifactors and Ryerson Orders, the text of the TCPA (namely, the definition of "telephone facsimile machine," *see* 47 U.S.C. § 227(a)(3), the FCC's 2003 Order (*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (rel. July 3, 2003)), and the CGAB's 2105 WestFax Order (*In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. 8620 (rel. Aug. 28, 2015), make clear that the TCPA regulates all unsolicited fax advertisements (those received through online fax services as well as those received on stand-alone fax machines). In short, neither Amerifactors nor Ryerson are entitled to any deference whatsoever, much less *Skidmore* deference. *See Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258, 264-65 (4th Cir. 2020).

authorization order from the Court, Plaintiff will be precluded from demonstrating which of the more than 26,700 fax recipients received the fax on a standalone fax machine. Plaintiff respectfully submits that such a circumstance constitutes manifest injustice, particularly where Defendant obtained the Amerifactors Bureau Order strictly to avoid liability as to all fax recipients and leave 58,944 victims of its violation of the TCPA without a remedy.[4]

### Procedural Background

In light of the Amerifactors Bureau Order, Plaintiff has endeavored to backstop its contention that the TCPA regulates all unsolicited fax ads by also differentiating online fax recipients from standalone fax recipients. Plaintiff set forth its method in its memorandum in support of its motion to reconsider. (Doc. 178-1, at 2). In short, after identifying the phone carriers of all numbers that successfully received the fax through the LNPA subpoena, *see* Good Decl. ¶ 4, Plaintiff began (and continued) serving the phone carrier subpoenas. (*Id.* ¶¶ 5-9). Each phone carrier subpoena contained the same two requests: (1) "For each telephone number on the list for the date listed, identify whether or not you provided online fax service to the subscriber of that telephone number," and (2) "For each telephone number on the attached list for the date listed, provide the name and address of the subscriber." (*See e.g.*, Doc. 176-1, Def.'s Opp. to Motion for Entry of Court Order, Ex. A., at 5-8 of 29).

Based on the Cable Act, discussed in detail *infra*, certain phone carrier subpoena respondents objected to producing responses containing information deemed by them to contain personally identifiable information of subscribers in the absence of an order authorizing said respondents to begin the Cable Act process of informing said subscribers of Plaintiff's subpoena

---

[4] Contrary to Defendant's assertion in its petition that such victims are not left without a remedy because they can always file individually, *see* Pet. Doc. 50-2, at 23, the fact of the matter is that without class actions, Defendants like Amerifactors will be given free rein to advertise as they please without concern of regulation under the TCPA. *See Chapman v. Wagener Equities, Inc.*, 2014 WL 540250 *16 (N.D. Ill. Feb. 11, 2014) (TCPA statutory damages give individual plaintiffs "a low incentive to bring a lawsuit on their own behalf.")

4

and allowing the subscriber to object. (Good Decl. ¶¶ 10-15). Therefore, on December 23, 2020, Plaintiff filed a motion styled as "Plaintiff's Motion and Incorporated Memorandum for Entry of Court Order to Pursue Immediate Discovery Compliance from Third Party Carriers." (Doc. 172). Defendant filed its Opposition to that motion on January 6, 2020. (Doc. 176).

On January 12, 2021, the Court denied Plaintiff's motion in a text Order, ruling because Plaintiff was not a governmental entity, the Court "lacks authority to issue the order requested by Career Counseling to enforce its civil subpoenas. (Doc. 177). On January 18, 2021, Plaintiff filed a motion to reconsider. (Doc. 178). Defendant filed its opposition on February 5, 2021. (Doc. 186).

Thereafter, on February 10, 2021, the Court denied Plaintiff's motion to reconsider without prejudice. (Doc. 187). The Court noted that Plaintiff's motion to reconsider argued that the Court's reading of § 551 is "incorrect" and "results in manifest injustice to Plaintiff as it restricts Plaintiff's ability to obtain evidence," the third prong recognized by the Fourth Circuit under Rule 54(b). (Doc. 187). The Court acknowledged that courts outside of the Fourth Circuit have authorized subpoenas under § 551(c)(2)(B) requested by nongovernmental entities, and that although the Court "did not commit error in declining to follow those decisions," such decisions of other district courts are "instructive," and the decisions of appellate courts outside the Fourth Circuit are "highly persuasive in the absence of binding authority from the Fourth Circuit or the Supreme Court." (*Id.*) The Court then held as follows:

> As to whether the January Order results in a manifest injustice, the court observes that nowhere in Plaintiff's Motion is there a statement of how many of the 300+ subpoenaed phone carriers refuse to respond without a court order. Without this information, the court is hesitant to conclude the January Order results in a manifest injustice and, therefore, DENIES WITHOUT PREJUDICE the Motion to Reconsider.

(Doc. 187) (emphasis in original).

5

**Plaintiff's statement regarding Cable Act objections and the subpoena process**

Between September 16, 2020 and February 8, 2021, Plaintiff served 475 phone carrier subpoenas on carriers identified by the LNPA, subpoena respondents, Defendant's expert Mr. Sponsler, and on j2 Global; each contains the same two requests set forth *supra*. (Good Decl. ¶¶ 4-9). Plaintiff's Counsel has repeatedly been told by subpoena recipients that they cannot provide a substantive subpoena response absent a Court authorization order under the Cable Act. (*Id*. ¶ 10). Among others, Mr. Good has spoken to the following entities (and representatives thereof) with the following results:

- **AT&T, Inc. ("AT&T")**: AT&T stated that upon receipt of an Order from this Court pursuant to the Cable Act, it will take at least 30 days for the notification process as required under said Act. The subpoena to AT&T includes **12,874** phone numbers for putative class members at issue in this case. (Good Decl. ¶ 11).

- **Charter Communications, LLC ("Charter")**: Charter stated that upon receipt of an Order from this Court pursuant to the Cable Act, it will take time to notify its clients as required under said Act. The subpoena to Charter includes **3,595** (1,291 + 2,304 Time Warner, now part of Charter) phone numbers for putative class members at issue in this case. (*Id*. ¶ 12).

- **Frontier Communications ("Frontier")**: Frontier stated that upon receipt of an Order from this Court pursuant to the Cable Act, it will take time to notify its clients as required under said Act. The subpoena to Frontier includes **2,861** phone numbers for putative class members at issue in this case. (*Id*. ¶ 13)

- **Cox Communications ("Cox"):** Cox stated that upon receipt of an Order from this Court pursuant to the Cable Act, it will take time to notify its clients as required under said Act. The subpoena to Cox includes **1,879** phone numbers for putative class members at issue in this case. (*Id*. ¶ 14)

- **Comcast Corporation ("Comcast"):** In addition to Mr. Good's conversation with Comcast, Comcast also stated in writing that they did not offer "online fax service" on the date of the faxing at issue in this case. This writing was attached to Defendant's opposition to Plaintiff's original motion regarding the Cable Act. (*See* Doc. 176-1 at 13 of 29). Comcast advised it would not be able to provide a detailed subpoena response without an Order from this Court pursuant to the Cable Act. The subpoena to Comcast includes **5,538** phone numbers for putative class members at issue in this case. (*Id*. ¶ 15)
- Mr. Good has spoken to many other subpoena respondents since September of 2020 that have indicated that they could not respond to the subpoena until they receive an Order from this Court pursuant to the Cable Act. Attached hereto as Group Exhibit A (redacted) are phone carrier subpoena responses requiring an authorization from the Court under the Cable Act prior to complying with the subpoena. (*Id*. ¶ 16)

As of the date the Good declaration was signed, responses have been received on more than 21,300 telephone numbers from the target list. (*Id*. ¶ 17). However, more than 120 subpoena recipients for whom we can document the subpoenas were delivered successfully via certified mail, have failed to respond to the subpoena in whole or in part. (*Id*.) If responses are received just from the phone carriers listed above, it would result in complete responses for an additional 26,700 numbers, thus bringing the total to more than 48,000 numbers (more than 81% of the putative class). (*Id*.)

### Precise Relief Requested

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, § 551(c)(2)(B) of the Cable Act, 47 U.S.C. § 551(c)(2)(B), and this Court's Order (Doc. 187), Plaintiff respectfully requests that the Court reconsider its January 12, 2021 Order, enter Plaintiff's revised proposed Order, and authorize the phone carrier subpoena respondents to disclose the information requested in the phone carrier subpoenas, in accordance with the terms of the revised proposed

7

order, attached hereto as Exhibit 2.

## Basis of the Relief Requested

In its Order denying without prejudice Plaintiff's motion to reconsider, Doc. 187, the Court recognized that courts outside the Fourth Circuit have authorized subpoenas and the release of personally identifiable information to nongovernmental entities under § 551(c)(2)(B). Based on the Court's Order, Plaintiff in this renewed motion to reconsider has supplied the Court with the identity of certain phone carrier subpoena respondents that refuse to comply with the subpoena without an order from this Court authorizing such production. Plaintiff further submits that it should be permitted to obtain relevant evidence to address the Amerifactors Bureau Order as said Order was obtained solely to oppose class certification. Finally, the TCPA is a remedial statute and thus entitled to broad construction: "it should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *May v. Venture Data, LLC*, 245 F. Supp. 3d 771, 775 (N.D. West Va. 2017) (citation omitted). Towards that end, Plaintiff respectfully requests that the Court exercise its discretion under Rule 54(b) to reconsider its denial of Plaintiff's Cable Act motion and enter the revised proposed order attached hereto as Exhibit 2.

## Standards for a Motion to Reconsider

Federal Rule of Civil Procedure 54(b) provides in part that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." As this Court has recognized, under Rule 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such judgment is warranted." *Ashmore v. Williams*, 2017 WL 24255, at *2 (D. S.C. Jan. 3, 2017) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc*., 326 F.3d 505, 514-15 (4th

Cir. 2003)).

While the precise standard governing motions to reconsider is not specified, the Fourth Circuit has stated Rule 54(b) motions are "not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Wellin v. Wellin*, 2019 WL 5394201, at *1 (D.S.C. Oct. 22, 2019) (quoting *Am. Canoe Ass'n*, 326 F.3d at 514); *see also R.E. Goodson Constr. Co. v. Int'l Paper Co.*, 2006 WL 1677136, at *1 (D.S.C. June 14, 2006) (noting that the Fourth Circuit has offered little guidance as to the appropriate standard for evaluating Rule 54(b) motions other than admonishing district courts not to apply the standard for Rule 60(b) motions).

A motion brought under Rule 54(b) is typically judged by the same analysis as a motion brought under Rule 59(e), which is as follows: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; (3) to correct a clear error of law or prevent manifest injustice." *Wellin*, 2019 WL 5394201, at *1 (citations omitted). "Manifest injustice occurs where the court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension.'" *South Carolina v. United States*, 232 F. Supp. 3d 785, 799 (D.S.C. 2017) (citation omitted); *see also Evans v. Trinity Indus., Inc.*, 148 F. Supp. 3d 542, 544 (E.D. Va. 2015) (same). The resolution of a motion to reconsider pursuant to Rule 54(b) is "committed to the discretion of the district court," which may be exercised "as justice requires." *Am. Canoe Ass'n*, 326 F.3d at 515.

### Argument

**I.    Plaintiff respectfully submits that a non-governmental entity (such as Plaintiff) is permitted under § 551(c)(2)(B) of the Cable Act to obtain personally identifiable information.**

Plaintiff is cognizant of the Court's February 10, 2021, Order regarding out-of-circuit decisions allowing nongovernmental entities to obtain disclosure of personally identifiable information under the Cable Act pursuant to subpoena in accordance with the terms of said Act.

9

(Doc. 187). For context, Plaintiff provides the following from the Cable Act, 47 U.S.C. § 551:

**§ 551(a)(2) For purposes of this section, other than subsection (h)—**

    (A) The term "personally identifiable information" does not include any record of aggregate data which does not identify particular persons.

*   *   *

**§ 551(c) Disclosure of personally identifiable information**

    (1) Except as provided in paragraph (2), a cable operator shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or cable operator.

    (2) A cable operator may disclose such information if the disclosure is –

        (A) necessary to render, or conduct a legitimate business activity

        (B) Subject to subjection (h), made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed;

        (C) A disclosure of the names and addresses of subscribers to any cable service, if—

            (i) The cable operator has provided the subscriber the opportunity to prohibit such disclosure, and

*   *   *

        (D) to a government entity as authorized under chapters 119, 121, or 206 of Title 18, except that such disclosures shall not include records revealing cable subscriber selection of video programing from a cable operator.

**§ 551(h) Disclosure of information to governmental entity pursuant to court order**

Except as provided in subsection (c)(2)(D), a governmental entity may obtain personally identifiable information concerning a cable subscriber pursuant to court order only if, in the proceeding relevant to such court order—

    (1) such entity offers clear and convincing evidence that the subject of the information is reasonably suspected of engaging in criminal activity and that the information sought would be material evidence in the case; and

    (2) the subject of the information is afforded the opportunity to appear and contest such entities claim.

In its motion to reconsider, and in response to certain "notice" arguments set forth by Defendant, Plaintiff submitted a revised proposed order that authorized (but did not require) the phone carrier subpoena respondents to disclose identifying information, thereby preserving the ability of the phone carrier subpoena respondents to object, and which provides additional time

for both the phone carrier's subscribers to notify their subscribers (ten days) and for the subscribers to object to said disclosure (two weeks) in the event subpoena respondents answer Request No. 2.[5] (*See* Pl.'s Mot. Reconsider, Revised Proposed Order, Doc. 178-2). Plaintiff's revised order submitted with this motion provides for thirty days for the subpoena respondents to notify their subscribers and provides twenty-one days for said subscribers to object. (*See* Ex. 2).[6]

As stated, the Court's Order denying Plaintiff's motion to reconsider recognizes that courts outside of the Fourth Circuit have authorized subpoenas under § 551(c)(2)(B) requested by nongovernmental entities. (Doc. 187). The rationale for allowing such subpoenas is set forth in *Fitch v. Doe*, 869 A.2d 722, 728-29 (Me. 2005):

> Doe contends that the reference to § 551(h) at the beginning of § 551(c)(2)(B) serves to meld the sections into one specific exception, applicable only when a governmental entity is seeking disclosure. This misapprehends the plain language of the statute. Section 551(c)(2)(B) allows a cable operator to disclose subscriber information when ordered to do so by a court. Section 551(h) imposes a stricter burden when it is a governmental entity seeking that information. If the government wants the information, it must demonstrate, by clear and convincing evidence, reasonable suspicion of criminal activity. 47 U.S.C. § 551(h)(1). (West Supp. 2004). When the party seeking information is not a governmental entity, § 551(h) is not applicable. The use of the "subject to" language ensures that governmental entities will not be able to bypass § 551(h); it does not impose the requirements of § 551(h) on parties who are not governmental entities.

The court in *Fitch* also noted its decision was consistent with the decision in *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002), wherein the Seventh Circuit vacated a district court order denying the defendant's discovery request that the plaintiff, a cable operator, turn over copies of its subscriber lists. Citing § 551(c)(2)(B), the Seventh Circuit held that "there is no privilege or restriction on releasing company records to a non-governmental

---

[5] A "target" list obtained from AdMax contains, *inter alia*, a business name, a contact name, a mailing address, a telephone number, and a fax number of each recipient in the fax logs. (*See* Doc. 176, Def.'s Opp. at 4.

[6] The times for the phone carriers to provide notice and the subscriber to object are of course subject to the Court's view as to the reasonableness of said time frames.

entity pursuant to a court order." *Id.*; *see also Malibu Media, LLC v. John Does 1-11*, 2012 WL 1681823, at *1 (D.C. Apr. 11, 2012) (allowing disclosure under Cable Act to nongovernmental entity if in accordance with Cable Act procedures); *Liberty Media Holdings, LLC v. Swarm of November 15 to December 9, 2010*, 2011 WL 1768746, at *1 (D. Nev. May 9, 2011) (same).[7]

As set forth above, Plaintiff has submitted the information identified by the Court as lacking in Plaintiff's original motion to reconsider, *see* Doc. 187, namely, identification of phone carrier subpoena respondents (representative of those) objecting based on the absence of an authorization order under the Cable Act. Again, based on just five of the entities discussed above, Plaintiff will be able to determine which of the additional 26,700 phone numbers were received on a standalone fax machine. Defendant obtained the Amerifactors Bureau Order to oppose class certification and avoid liability for the 58,944 unsolicited fax ads it sent. Plaintiff respectfully submits it should be given every opportunity to obtain the evidence to oppose Defendant's "online fax" argument, and further respectfully submits that the denial of such an opportunity based on the circumstances described herein would be manifestly unjust.

District courts retain the power to reconsider and modify interlocutory judgments "at any time prior to final judgment when such is warranted." *Nix v. Holbrook*, 2015 WL 1958745, at *2 (D.S.C. Apr. 30, 2015). "This power of reconsideration is committed to the discretion of the district court." *Id*. The TCPA is a remedial consumer protection statute that "should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *May*, 245 F. Supp. 3d at 775. Plaintiff respectfully requests that the Court exercise its discretion under Rule 54(b) to reconsider its denial of Plaintiff's Cable Act motion and enter the revised proposed order attached hereto as Exhibit 2.

---

[7] In *Spine and Sports Chiropractic, Inc. v. Zirmed, Inc.*, No. 3:13 cv 489-TBR (W.D. Ky. Feb. 6, 2015), the court in a TCPA case entered an order similar to that which Plaintiff seeks before this Court. (*See* Pl.'s Mot. to Reconsider, Doc. 178-3).

## II.     Defendant's arguments mentioned in the Court's Order are unavailing.

Plaintiff responds to arguments raised by Defendant in its opposition to Plaintiff's motion to reconsider, including arguments mentioned by the Court in its February 10, 2021 Order, namely, that there is no basis to reconsider its denial of Plaintiff's motion, and that "Plaintiff's request is overly burdensome and not proportional to the needs of the case." (Doc. 187).

First, Defendant's arguments regarding the Court's interpretation of the Cable Act, and its arguments regarding Plaintiff's authorities supporting its motion to reconsider, *see* Opp., Doc. 186 at 5-7, do not survive the Court's February 10, 2021 Order. (Doc. 187).  The Court has acknowledged that courts outside of the Fourth Circuit have authorized subpoenas under § 551(c)(2)(B) requested by nongovernmental entities. (Doc. 187). The Court stated that regarding "manifest injustice," Plaintiff had not submitted evidence regarding which of the subpoena respondents refused to respond without a court order.  (*Id.*)  Plaintiff has done so in this renewed motion as to certain subpoena respondents, totaling 26,700 out of the 58,944 total fax recipients, or forty-five percent of the putative class.

Second, Defendant argues that Plaintiff "asks this Court to issue an order <u>compelling</u> third-party phone-carriers to (i) attempt to reconstruct historical subscriber data that is nearly five years old, (ii) provide notice to subscribers that are identified, and (iii) if there is no objection to the provision of such information, to produce it to Plaintiff." (Doc. 186, Opp. at 2) (emphasis added).  Defendant then asserts that the authorization order under the Cable Act sought by Plaintiff "<u>essentially seeks an order compelling compliance</u> with Plaintiff's Subpoenas but Plaintiff *still* has not provided any evidence that notice of either the Cable Act Motion or the Reconsideration Motion have been provided to Subpoena recipients." (Opp. at 8) (emphasis added). According to Defendant, the third-party subpoena respondents "should have the opportunity to respond to the requested relief and Plaintiff's revisions to the proposed order do not cure this defect." (Opp. at 9).   Defendant's arguments are factually and legally

13

unsupportable.

Contrary to Defendant's claim, the revised proposed order attached to Plaintiff's motion to reconsider, *see* Doc. 178-2, and the revised proposed order attached hereto, *see* Ex. 2, authorize (but do not seek to compel) the phone carrier subpoena respondents to disclose identifying information, thereby preserving the ability of the subpoena respondents to object, as well as providing additional time for both the phone carrier's subscribers to notify their subscribers and for the subscribers to object to said disclosure. (Revised Proposed Order, Doc. 178-2; *see also*, Ex. 2). Moreover, the third-party subpoena respondents were not entitled to notice of either the original or this revised motion to reconsider as they are not parties to this case.

Third, Defendant's argument that the subpoenas impose an undue burden on it because it is "forced to expend additional resources to attempt to interpret the Responses, conduct any appropriate follow-up and essentially conduct individualized inquiries with respect to the numbers at issue in a given Subpoena," *see* Opp. at 10, rings hollow, if not patently so, and is legally untenable. Defendant has no standing under Rule 45 to complain of any claimed burden that Defendant contends is experienced by the phone carrier respondents, *see Grey v. Cuccinelli*, 2020 WL 3104744, at *3 (D. S.C. June 11, 2020) (citing *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005)). Moreover, it was the Defendant that petitioned the FCC in an effort to "rein in putative class actions arising from fax advertisements," *see* Amerifactors Petition, Doc. 50-2, at 23, and obtained the erroneously decided Amerifactors Bureau Order. It is the Defendant who has already told the Court it will rely on said order to oppose class certification. *See supra* at 3 n.2. In other words, having gone to great lengths to put the online fax service issue in play, Defendant is hardly in a position to complain of Plaintiff's efforts to obtain evidence to answer (if necessary) the Amerifactors Bureau Ruling.

Fourth, Defendant's "proportionality" argument is unsupportable. Parties are permitted

to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense proportional to the needs of the case. *Murray v. City of North Charleston*, 2020 WL 7231630, at *2 (D.S.C. Dec. 8, 2020) (citing Fed. R. Civ. 26(b)(1)). The scope of discovery under a Rule 45 subpoena is equivalent to the scope of discovery allowed under Rule 26. *Id*. (citation omitted); *Grey v. Cuccinelli*, 2020 WL 3104744, at *3 (D. S.C. June 11, 2020) (same). A discovery request is relevant "if there is any possibility that the information sought might be relevant to the subject matter of [the] action." *Machinery Solutions, Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D. S.C. 2018). Whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Here, the amount in controversy is $29,472,000 (Twenty-Nine Million Four Hundred Seventy-Two Thousand Dollars) (58,944 faxes at $500 a fax). In and of itself, that makes Plaintiff's subpoena process proportional. Moreover, in defense of this action, Defendant filed the aforementioned Amerifactors petition with the FCC (resulting in the Amerifactors Bureau Order) and has retained two experts in this case, one who has issued two expert reports, the second addressing phone carrier subpoena responses. (*See* Sponsler Supplemental Report, Doc. 186-2). As stated, Defendant should not be permitted on the one hand to rely on the Amerifactors Bureau Order to attempt to defeat class certification and on the other hand claim Plaintiff's response to that argument—serving subpoenas on phone carriers to discern which recipients received the fax via an online fax service—is not proportional. Clearly, the subpoenas are proportional, as is Plaintiff's request for an authorization order under the Cable Act.

Fifth, Defendant's argument that Plaintiff's methodology for differentiating standalone fax recipients from those that received the fax through an online fax service won't work and that

15

it should not be given "further latitude on this issue," *see* Opp. at 10-11 n. 11, is simply not a basis upon which to deny Plaintiff's renewed motion to reconsider. If the Court concludes that Plaintiff should be required to differentiate between standalone and online fax recipients, it is the Court that gets to decide upon the efficacy of Plaintiff's methodology (which Plaintiff submits will be a class-wide issue), and Plaintiff respectfully submits such an analysis should wait until the process is complete.

Finally, Defendant's attempt to distinguish *True Health Chiropractic, Inc. v. McKesson Corp.*, 2020 WL 7664484, at *8 (N.D. Cal. Dec. 24, 2020), where the court stated it was "satisfied with Plaintiff's proposed three-step subpoena process to distinguish members of these subclasses based on Plaintiff's counsel's experience in another TCPA case," and to rely on *Scoma Chiropractic, P.A., v. Mastercard, Int'l, Inc.*, Case No. 2:16-cv-00041-JLB-MRM, at Doc. 172, at 38-40, 56 (M.D. Fla. Jan. 29, 2021)[8], both miss the mark. Unlike both of those cases, Plaintiff in the instant is 475 subpoenas into the process, a process that Defendant is endeavoring to peremptorily end by objecting to Plaintiff's request for an authorization order under the Cable Act. Defendant's attempt should be rejected.

## Conclusion

WHEREFORE, for the reasons stated herein, Plaintiff respectfully requests that the Court reconsider its January 12, 2021 Order and its February 10, 2021 Order and that it enter an Order authorizing the phone carrier subpoena respondents to disclose the information requested in the phone carrier subpoenas in accordance with the terms of the revised proposed Order attached hereto as Exhibit 2. Also attached as Exhibit 3 is a proposed Order granting Plaintiff's renewed motion to reconsider.

---

[8] The *Scoma* decision was issued by the magistrate judge in that case; an objection to that decision has been filed and is currently pending before the district court.

Respectfully submitted,

CAREER COUNSELING, INC. d/b/a SNELLING STAFFING SERVICES, individually and as the representative of a class of similarly-situated persons.

By: /s/ John G. Felder, Jr.
John G. Felder, Jr.
McGOWAN HOOD FELDER
1517 Hampton St.
Columbia, SC 29201
Telephone: 803-779-0100
Fax: 803-256-0702

Brian J. Wanca (*admitted pro hac vice*)
Ryan M. Kelly (*admitted pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Facsimile: 847-368-1501

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

By: /s/ John G. Felder, Jr.
        John G. Felder, Jr.