# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| CAREER COUNSELING, INC. d/b/a SNELLING STAFFNG SERVICES, individually and as the representative of a class of similarly-situated persons, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | ) No. 3:16-cv-03013-JMC |
| v. | )<br>)<br>) |
| AMERIFACTORS FINANCIAL GROUP, LLC, and JOHN DOES 1-5, | )<br>)<br>) |
| Defendants. | ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR LEAVE TO FILE SUR-REPLY

Plaintiff Career Counseling, Inc. submits this Memorandum in Opposition to Amerifactors Financial Group, LLC's ("Defendant" or "AFGL") Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion for Class Certification. (Doc. 215).

### Introduction

AFGL's motion for leave to file a sur-reply claims that a sur-reply is necessary "to respond to Plaintiff's arguments first raised in the Reply, and to address recently obtained discovery," and that good cause exists to grant the "additional briefing" because the case "presents complex and important issues." (AFGL Mot. at ¶¶ 5, 6). AFGL has attached its proposed sur-reply as Exhibit A to its motion. Plaintiff cites to the proposed sur-reply herein as "Doc. 215-1." As discussed below, AFGL's motion should be denied, and its attached proposed sur-reply (Doc. 215-1) should be stricken from the record.

First, AFGL's motion fails to explain why it waited seventeen days after Plaintiff's reply was filed to seek leave to file a sur-reply. (Doc. 215, at ¶¶ 1-7). Second, contrary to its claim,

AFGL's proposed sur-reply merely reiterates arguments that AFGL has already made in opposition to Plaintiff's motion for class certification. (*See* Doc. 206). Third, the arguments made by Plaintiff in its reply, and the cases cited therein, are directly responsive to arguments raised by AFGL in its opposition. AFGL should not get a second bite at the apple to reargue issues it has already addressed. The fact that these issues may be complex, moreover, does not change the pertinent analysis or the required outcome.

## Argument

I. **AFGL offers no explanation for why it waited until seventeen days after receiving Plaintiff's reply in support of its motion for class certification, and two days before oral argument on that motion, to request leave to file a sur-reply.[1]**

The Court's Amended Scheduling Order ("Scheduling Order") required Plaintiff's motion for class certification to be filed by March 16, 2021, AFGL's opposition to be filed by April 16, 2021, and Plaintiff's reply to be filed April 30, 2021. (Doc. 128 ¶ 9). The Scheduling Order made no allowance for a sur-reply. (*Id.*) Plaintiff's reply to AFGL's forty-page opposition, *see* Doc. 206, was timely filed on April 30, 2021. (*See* Doc. 211). Plaintiff filed as supplemental authority the Sixth Circuit's opinion in *Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021), a case of which AFGL's experienced counsel no doubt was already aware, on March 31, 2021 (*see* Doc. 200), sixteen days before AFGL's opposition was due. In fact, AFGL requested five additional pages for its opposition, in part, to address that decision. (*See* Doc. 204 ¶¶ 2, 3).

On May 17, 2021, seventeen days after Plaintiff timely filed its reply, and two days before the May 19, 2021, oral argument on Plaintiff's motion for class certification, AFGL filed a motion for leave to file a sur-reply. (Doc. 215) AFGL's motion offers no basis nor explanation for its delay. Local Civil Rule 7.07: *Replies*, provides:

---

[1] As AFGL has submitted its proposed sur-reply with its motion, Plaintiff is compelled to address the merits of AFGL's arguments here.

2

> Replies to responses are discouraged. However, a party desiring to reply to matters initially raised in a response to a motion or in accompanying supporting documents shall file the reply within seven (7) days after service of the response, unless otherwise ordered by the court.

Here, AFGL's motion meets neither the fourteen days Plaintiff was allowed for its reply under the Court's Scheduling Order, nor the seven days allowed for replies in the Local Rules. For that reason alone, AFGL's untimely motion for leave to file a sur-reply should be denied.

**II.     AFGL's representation to the Court that a sur-reply is necessary to "respond to Plaintiff's arguments first raised in the Reply" regarding the Amerifactors Order is incorrect, as AFGL's reiteration of its previously made arguments makes clear.**

In addition to AFGL's unjustifiable tardiness, AFGL's representation to the Court that a sur-reply is necessary "to respond to Plaintiff's arguments **first raised in the Reply**," Mot. at ¶ 5 (emphasis added), is incorrect. First, contrary to AFGL's assertion, Plaintiff did not first raise the issue of whether Amerifactors is a "merits question" in its reply. Rather, Plaintiff argued in its opening brief that AFGL's "anticipated reliance" on the Consumer & Governmental Affairs Bureau ("Bureau") decisions in the Amerifactors and Ryerson Orders "is misplaced because whether either of these interpretive Bureau Orders are entitled to *Skidmore* deference and/or can be applied retroactively **are classwide merits issues** that need not and should not be decided now." (Doc. 197-1 at 2) (emphasis added). Plaintiff further argued:

> While AFGL may try to defeat class certification based on the Amerifactors and Ryerson Orders, those interpretive Orders **raise classwide merits issues** and therefore fail to defeat Rule 23(b)(3) predominance for that very reason—Plaintiff does not have to prevail on the merits of classwide issues; it merely needs to show they predominate. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013). In short, Rule 23(b)(3) predominance is satisfied.

(*Id*. at 15) (emphasis added). Plaintiff's *Section IV* heading in its opening brief stated: "**The Amerifactors and Ryerson Orders present class-wide issues and further, they are entitled to no deference under *Skidmore* in this Court**." (*Id*. at 18) (emphasis in original). Plaintiff added that "assuming *arguendo* AFGL makes it past *Amerifactors Fin. Grp*., the issue of the level of

3

deference the Amerifactors and Ryerson Orders receive in this Court (which Plaintiff respectfully submits should be none), **is a class-wide question**." (*Id.*) (emphasis added).

Further evidencing its "first raised in the Reply" canard is the fact that AFGL actually addressed Plaintiff's contention in its opening brief that the Amerifactors Order raises classwide merits questions in its opposition brief, stating that "[w]ith respect to the All Recipients Class, Plaintiff's position is that this Court should either defer consideration of the Amerifactors Order or ignore it entirely." (Opp., Doc. 206, at 20 (citing Cert. Mot. 14, 18); *see also infra* at 4). In short, AFGL's "first raised in the reply" claim regarding the classwide effect of the Amerifactors Order is simply incorrect. Citing only to Plaintiff's reply regarding the Amerifactors Order issue, as AFGL does in its proposed sur-reply, does not change that fact. (*See* Doc. 215-1 at 3) (citing Pl.'s Reply, Doc. 206, at 12-15).

Second, after conceding that the effect of the Amerifactors Order "may be a merits question," AFGL makes the identical (and mistaken) argument in its proposed sur-reply that it did in its opposition brief, premised on the identical case, *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014), and the identical quote from that case—"courts should consider merits questions to the extent 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (*See* Doc. 215-1 at 3; *see also* AFGL's Opp., Doc. 206, at 20-21). Plaintiff responded to AFGL's argument premised on its misapplication of *EQT* in its reply. (Doc. 211 at 15). AFGL's reiteration of the identical argument in its proposed sur-reply fares no better the second time around, and again underscores the baselessness of AFGL's motion for leave.

Third, in its opposition brief, AFGL argued that "no court confronted with this issue at the class certification stage has agreed that it is appropriate to defer the issue beyond class certification," citing *True Health Chiropractic Inc. v. McKesson Corp.*, 2020 WL 7664484 (N.D.

4

Cal. Dec. 24, 2020) ("*True Health III*"), *Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, 2020 WL 4937790 (W.D. Tenn. Aug. 24, 2020), and *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, 2018 WL 2455301 (M.D. Fla. June 1, 2018) ("*Scoma I*"). (AFGL Opp., Doc. 206, at 21). Continuing to run roughshod over its "first made in Plaintiff's reply" predicate, AFGL in its proposed sur-reply again argues that the Court should consider the effect of the Amerifactors Order at class certification, again mistakenly relying on the same cases—*True Health III, Advanced Rehab,* and *Scoma I*. (Doc. 215-1, at 3-5). Plaintiff addressed AFGL's arguments in its reply. (*See* Doc. 211 at 12-15).

Moreover, AFGL's repeat argument regarding *Advanced Rehab* in its proposed sur-reply ignores the fact that the district court's decision in that case does not apply in the Fourth Circuit. Even the *Advanced Rehab* court recognized that the Amerifactors Order was "interpretative," 2020 WL 4937790, at *7, but it rejected plaintiff's argument that it was entitled to no deference based on *Leyse v. Clear Channel*, 545 F. App'x 444, 453 (6th Cir. 2013), "where the court explained the key inquiry is whether Congress delegated the necessary authority, not whether the rule is termed interpretive of legislative." *Advanced Rehab*, 2020 WL 4937790, at *7. Here, as discussed at length in Plaintiff's opening brief, *see* Doc. 197-1 at 18-20, the Fourth Circuit in *Carlton & Harris, Inc. v. PDR Network, LLC*, held that the FCC's interpretive rules are subject only to *Skidmore* deference, rather than *Chevron* deference. 982 F.3d 258, 265 (4th Cir. 2020) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). In short, *Advanced Rehab* is still inapposite.

AFGL's proposed sur-reply ignores that the Sixth Circuit's denial of plaintiff's Rule 23(f) petition in *Advanced Rehab* expressly found that the Amerifactors Order was a "merits" issue. (*See* Doc. 211-15, *In re Advanced Rehab & Med., P.C.*, No. 20-0506 (Apr. 27, 2021), Order at 4). The Sixth Circuit noted that plaintiff "seeks permission to appeal so that we may review whether the

district court erred in holding that the Amerifactors Ruling is entitled to deference and in failing to address whether it is retroactive." *Id*. at 3. After stating that "no circuit court has considered these issues, and only a few district courts have," and that "this is unquestionably a novel and unsettled issue," the Sixth Circuit stated:

> But even if the district court erred in that regard, we have said that "an appeal under Rule 23(f) should be limited to review of class certification issues," and "**should not become a vehicle for early review of a legal theory that underlies the merits of a class action.**" *In re Delta Air Lines*, 310 F.3d at 960.  Advanced Rehab's quarrel with the Amerifactors Ruling falls squarely in the latter category.

*Id*. at 3, 4 (emphasis added). In other words, in addition to being inapplicable in district courts in the Fourth Circuit, the Sixth Circuit's Rule 23(f) Order in *Advanced Rehab* also expressly recognized that the Amerifactors Order raises "merits" issues.

Fourth, AFGL inexplicably reargues *True Health*. In its opposition brief, AFGL argued that "although the courts in [*True Health*] and [*Advanced Rehab*] certified subclasses of stand-alone fax machine recipients only, they did not apply the rigorous ascertainability requirement mandated by the Fourth Circuit. . .," and further, "the [*True Health*] court has already entered judgment against the online fax recipient class, further confirming such recipients have no TCPA claim." (AFGL Opp., Doc. 206, at 34 n.22) (emphasis added).  In its proposed sur-reply, AFGL again makes essentially the same argument, premised on *True Health*, couched this time as the [*True Health*] court "did not address whether the 'Stand-Alone Fax Machine Class' is ascertainable—a requirement under Fourth Circuit law for certification that the Ninth Circuit does not apply." (Doc. 215-1, at 4). Plaintiff has already addressed AFGL's mistaken reliance in its opposition on *True Health*, *see* Doc. 211 at 13, and has also addressed AFGL's argument regarding the ascertainability of the proposed stand-alone fax machine class (Class B), *id*. at 21-22; *see also infra* at 10-11. The proposed sur-reply merely repeats the same points based on the same authority it already proffered in its opposition brief, and to no greater effect. Finally, AFGL has begrudgingly

6

admitted that summary judgment was not entered against the online fax class in *True Health*, *see* Doc. 215-1 at 4 n.4, evidencing that its statement to the contrary in its opposition was false, *see* Doc. 206 at 34 n.22.

Fifth, AFGL also reargues the *Scoma* cases—*Scoma I*, *see supra*, *Scoma Chiropractic, P.A. v. Mastercard Int'l Inc.*, 2021 WL 720347 (M.D. Fla. Jan. 29, 2021) ("*Scoma II*"), and *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, 2021 WL 1566668, at *4 (M.D. Fla. Apr. 21, 2021) ("*Scoma III*"). These cases were all relied upon by AFGL in its opposition, *see* Doc. 206 at 21, 26, 28, and were addressed by Plaintiff in its reply, *see* Doc. 211 at 13-15, 18. An argument in AFGL's proposed sur-reply that does warrant a response is AFGL's assertion that Plaintiff "cherry-picked" portions of *Scoma III* and that the court in that case "directly acknowledged that the question of whether online fax recipients have a claim under the TCPA 'factors into the Rule 23 class certification' because it 'might raise issues as part of the manageability criterion of Rule 23(b)(3)(D).'" (Doc. 215-1, at 5 n.5) (citing *Scoma III*, 2021 WL 1566668, at *4). Contrary to AFGL's "cherry-picked" claim, the court in *Scoma III* expressly stated that **the question of whether users of "online fax services" have a claim under the TCPA is itself "a merits contention that is common to the class" that is properly decided "at trial or in a ruling on a summary-judgment motion" and "should not be resolved in deciding whether to certify a proposed class**." *Scoma III*, 2021 WL 1566668, at *4) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013)) (emphasis added). The *Scoma III* court further stated:

> The Court does not believe it makes sense to issue another stay in this case to wait for yet another FCC ruling on the question of whether an online fax service falls within the purview of the TCPA. That question, after all, **goes to the merits** of whether Plaintiff Mussat can state a valid claim for relief. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013) (**a merits contention that is common to the class, the resolution of which might result in a lack of predominance for purposes of Rule 23(b)(3), "is properly addressed at trial or in a ruling on a summary-judgment motion"; it "should not be**

7

> **resolved in deciding whether to certify a proposed class"**). It therefore factors into the Rule 23 class certification question only insofar as a ruling against Plaintiff Mussat might raise issues "as part of the manageability criterion of Rule 23(b)(3)(D)." *Cherry*, 986 F.3d at 1304.
>
> The FCC's ultimate resolution of the AmeriFactors Petition, however, is relevant to this case because it may affect a merits issue that presents a question of law common to the proposed class. **While the ultimate resolution of that common legal issue might have an effect on class manageability, that issue can be addressed when and if it arises at some point in future proceedings; it need not be addressed in the context of class certification**. That is, if a later substantive ruling on the merits of the online fax issue renders a certified class unmanageable, then, as the Eleventh Circuit observed in Cherry, the district court always has the discretion to decertify the class. See *id.* (citing *Mullins v. Direct Digit, LLC*, 795 F.3d 654, 664 (7th Cir. 2015). What does not make sense is for this Court to issue another stay to wait for the FCC to issue still another ruling on that merits issue, particularly given that **the FCC's final ruling may or may not be binding on this Court depending on what the controlling law is on that question at the time of that FCC ruling**. See *Gorss Motels, Inc. v. Safemark Sys.*, LP, 931 F.3d 1094, 1105-12 (11th Cir. 2019) (Pryor, J., concurring) (urging the Eleventh Circuit to overrule previous circuit authority holding that district courts are bound by the FCC's interpretations of the TCPA and instead follow the concurring opinion in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc*., 139 S. Ct. 2051, 2057 (2019) (Kavanaugh, J., concurring)).

*Scoma III*, 2021 WL 1566668, at *4 (boldfaced emphasis added). No credible reading of the foregoing passages from *Scoma III* could draw any conclusion other than the court held that the effect of the Amerifactors Order presents a classwide issue to be addressed at summary judgment or at trial. Added to that, the Fourth Circuit's *PDR Network* decision has already answered in the negative the question posed by the *Scoma III* court as to whether the FCC's final ruling "on that merits issue" will be binding on the district court – it will not.

Finally, AFGL in its proposed sur-reply takes another run at the Sixth Circuit's decision in *Lyngaas v. Curaden AG*, 992 F.3d 412, 426 (6th Cir. 2021), which held that the definition of "telephone facsimile machine" includes faxes received on computers. Plaintiff set forth the *Lyngass* opinion in its Notice of Supplemental Authority (*See* Doc. 200 at 1-5), providing AFGL ample opportunity to address it in its opposition, which it in fact did. (*See* Doc. 206 at 24 n.13, 26

8

n.15, 29). Piling on to the arguments already made in its opposition, AFGL now seeks to argue that the Amerifactors Order "requires" the Court to differentiate the manner in which recipients of the Fax received it, Doc. 215-1 at 5 (citing Opp., Doc. 206 at 22-27), and that the Sixth Circuit's Rule 23(f) Order in *Advanced Rehab* "cabined" the applicability of the *Lyngass* opinion in that the Amerifactors Order was not mentioned by either party in *Lyngass*. (Doc. 215-1 at 5).

AFGL is wrong at every turn. This Court is not "required" to even address the Amerifactors Order at class certification much less follow it other than to find it presents classwide issues that should be addressed at summary judgment or trial. *Amgen*, 568 U.S. at 470. This Court is also not "required" to follow the Amerifactors Order based on the Court's ruling on AFGL's motion to dismiss, *see* Pl. Op. Br., Doc. 197-1 at 3, 4, 18, nor is the Court "required" to give the Amerifactors Order any deference whatsoever or apply it retroactively. (*See* Pl.'s Op. Br., Doc. 197-1 at 18-35; Pl.'s Reply, Doc. 211 at 16-20). Contrary to AFGL's claim, the Sixth Circuit's Rule 23(f) Order in *Advanced Rehab* did not "cabin" *Lyngass*—as stated, it held that the effect of the Amerifactors Order is a class merits issue. *In re Advanced Rehab & Med.* Order, at 4.

Finally, the *Lyngass* court held that the TCPA is not limited to faxes received on a "traditional fax machine" based on the definition of telephone facsimile machine in the statute, a point which was "reinforced" by the FCC under the 2003 Order and the WestFax Order. *Lyngaas*, 992 F.3d at 426 (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (July 3, 2003); *In re WestFax, Inc. Petition*, 30 FCC Rcd. 8620 (Aug. 28, 2015)). In other words, AFGL's gratuitous assertion at the outset of its proposed sur-reply that "the Amerifactors Order confirms that, as set forth under the statutory text of the TCPA, that recipients who receive a fax through an online fax service, even where such a fax constitutes an unsolicited advertisement, have no claim under the TCPA," *see* Doc. 215-1 at 1, is wrong. The

9

Sixth Circuit rejected as a matter of law the underlying predicate of the Amerifactors Order based on the text of the TCPA—it applies to faxes other than those received on a stand-alone fax machine.

### III. AFGL's representation to the Court that a sur-reply is necessary to "respond to Plaintiff's arguments first raised in the Reply" regarding the ascertainability of the alternative stand-alone fax machine class (Class B) is incorrect, since AFGL merely reiterates previously made arguments.

AFGL's proposed sur-reply repeats the same arguments it already has made regarding Plaintiff's subpoena methodology for identifying members of the alternative stand-alone fax machine class (Class B)—again contending that a subscriber to a phone carrier that does not provide online fax service "*could be* forwarding calls to the online fax service, or otherwise have connected its number to receive faxes over the internet." (Opp. at 10-11, 35 (citing Sponsler II Report ¶¶ 12, 13, 15, 16)) (emphasis added). Besides being redundant, AFGL's ascertainability argument as to Class B is nothing more than unsubstantiated speculation by AFGL (and its expert). Plaintiff addressed AFGL's arguments as to Class B in its reply. (*See* Pl.'s Reply, Doc. 211, at 22-23). As noted there, AFGL ignored Verizon's second response to Plaintiff's subpoena that admits that "On-line fax service is not a product ever provided by Verizon." (*See id.*)

AFGL's proposed sur-reply does not address arguments made for the first time in Plaintiff's reply, as claimed by AFGL, but instead makes the same "call forwarding" argument, this time with the addition of a declaration by Comcast. (*See* Doc. 215-1 at 1-3). AFGL's reliance on the Comcast declaration fails for the same reason the second Verizon response doomed AFGL's argument—Comcast did not offer online fax service when the Faxes at issue were sent in 2016, which Comcast admitted in a letter that AFGL previously filed in this case in opposition to Plaintiff's motion for entry of an authorization order under the Cable Act. (*See* Doc. 176 at 14 of 290 ("I can represent to you that Comcast's cloud-based online fax service, known as eComFax

10

service, was not provided by Comcast to any of its subscribers, including the subscribers on the list provided by the password-protected hyperlink list in your subpoena, in June 2016")). Comcast's declaration, like AFGL's arguments and Sponsler's second expert report, fail to identify any number that is forwarded to an online fax service; instead, Comcast simply speculates.

Thus, contrary to AFGL's repeat argument in its proposed sur-reply, Plaintiff's subpoena methodology is not "belied by the record," including the Verizon subpoena response or the Comcast declaration. AFGL's opposition and proposed sur-reply both argue that Sponsler's "expert testimony" is "unrebutted." (*See* Doc. 206 at 11; Doc. 215-1 at 3). There is nothing to rebut—Sponsler's "expert testimony" is nothing but untethered speculation regarding AFGL's "call forwarding" argument. Raising it a second time does not create a fact that needs to be rebutted.

IV. **AFGL's representation to the Court that a sur-reply is necessary to "respond to Plaintiff's arguments first raised in the Reply" regarding AFGL's attack on adequacy of Plaintiff and Plaintiff's counsel again is incorrect – these arguments were already raised and addressed.**

AFGL in its opposition brief argued that Plaintiff's counsel was not adequate because it "used discovery in this case to prosecute another litigation against a putative class member," which AFGL claims puts Plaintiff's counsel "in direct conflict with at least one member of the putative class it seeks to represent," and there is no evidence A+W sought or obtained a waiver, which AFGL posits "raises questions concerning their ability to represent the class, given their responsibility to absent class members." (Doc. 206 at 19). AFGL cited to S.C. Rules of Ethics 1.7, cmt. 3 in support. (*Id.* at n.8).

Plaintiff responded to AFGL's argument in its reply by noting that AFGL and the unnamed putative class member, *i.e.*, not a class representative, American Home Patient ("AHP"), were fully apprised regarding the identification of a phone provider (MetTel) that may lead to the potential

11

discovery of call-detail records that may relate to a case currently pending in the Eastern District of St. Louis. (*See* Doc. 206-3 at 11 to 18 of 80). In fact, the Good Decl. III, Doc. 211-10, ¶¶ 3-7, explains that AFGL had no objection to AHP signing the protective order in this case so that it could view the subpoena response from the phone carrier (MetTel), and had no objection to AHP's counsel's request to remove the confidentiality designation from this case from the documents obtained through the subpoena which were previously produced. AFGL ignores the Good Decl. III and simply repeats its previous argument. In sum, the claim that the foregoing regarding AHP makes Plaintiff's counsel inadequate is unsupportable, and AGFL's feigned concern for AHP or any putative member of the proposed classes is not credible.

Plaintiff also pointed out that AFGL's "waiver" argument failed as a matter of law pursuant to S.C. R. Prof. Conduct 1.7 (Conflict of Interest), cmt. 23, because unnamed members of a class are not considered clients for purposes of Rule 1.7(a)(1), and pursuant to the numerous authorities that have addressed the issue and reached the same result. (*See* Pl.'s Reply, Doc. 211, at 8, 9). AFGL asserts in its proposed sur-reply that this "suspect behavior is not simply counsel's representation of an absent class members to which it is also adverse, but rather, counsel's use of discovery obtained while representing that class member to prosecute another case *against that same entity*." (Doc. 215-1 at 6) (emphasis in original). This argument should sound familiar since it is identical to AFGL's argument in its opposition: "Plaintiff's counsel used discovery obtained in this case to prosecute another litigation *against* a putative class member." (Doc. 206 at 19) (emphasis in original). The only difference in these arguments is that AFGL has raised AHP to a "full class member" in its proposed sur-reply.

Contrary to AFGL's assertion, AHP is an "absent" putative class member that is not considered a client of Plaintiff's counsel, negating AFGL's waiver argument as a matter of law.

12

(*See* Pl.'s Reply, Doc. 211, at 8, 9).  In addition, the confidentiality designation of MetTel subpoena response was removed with no objection from AFGL, and AFGL fails to set forth any authority in response to Plaintiff's legal showing no such waiver is required. If no waiver is required, and the evidentiary material is not confidential, AFGL's argument necessarily disintegrates.

Finally, AFGL's proposed sur-reply again addresses the *Amsterdam* settlement (the one AFGL failed to list on its Rule 30(b)(6) notice). AFGL attempts to distinguish actions of its counsel in settling a case (*Lary v. Rexall*) on substantially similar terms (including a reversion of unclaimed funds from the settlement fund and appointment of A+W as class counsel), by arguing that Plaintiff represents a class while AFGL's counsel did not.  (Doc. 215-1 at 6). From this, AFGL continued its repeated and unsubstantiated attacks on Plaintiff and its counsel.  AFGL's argument again fails.

Putting to one side the fact that AFGL has already made this argument and Plaintiff has already replied (*see* Doc. 206 at 5, 6, 14; Doc. 211 at 7-12), the fact of the matter is that Plaintiff and Plaintiff's counsel in the *Amsterdam* case obtained a settlement fund of $9,999,999 which, after the agreed upon amount of 1/3 of the settlement fund and an incentive award of $15,000 for Plaintiff, left approximately $6,651,666 available for the class.  (Doc. 211 at 1, 2).  Accordingly, each class member that submitted a timely claim form would be paid $500 per unique fax number, and any money left in the settlement fund after expenses and claims would revert to *Amsterdam*. (*Id.* at 2). Plaintiff respectfully submits the foregoing was an excellent result for the class.

Moreover, while AFGL is content to criticize the *Amsterdam* settlement, AFGL was not at the mediation in *Amsterdam* and presumably has no idea what was discussed therein. AFGL's uninformed, after-the-fact collateral attack regarding the *Amsterdam* settlement fails to recognize how hard-fought that case actually was (as the numerous opinions from this Court in the *Amsterdam* litigation make clear). AFGL also fails to recognize the procedural posture of the

*Amsterdam* case when it settled at the scheduled mediation—Plaintiff still needed to prevail on its motion for class certification and, if it was successful, prevail on a summary judgment or at trial, and then prevail on any subsequent appeal. In other words, AFGL's attack on the *Amsterdam* settlement simply second-guesses the actions of the parties involved in *Amsterdam*, their attorneys, the mediator, and the state court in Missouri.

While AFGL complains of the claims rate in the *Amsterdam* case, see Doc. 215-1 at 6 ("modest payout to the settlement class members"), just as it did in its opposition brief (on "information and belief," *see* Doc. 206 at 5), Plaintiff and Plaintiff's counsel obtained a substantial result for class members—$500 per unique fax number. That a percentage of class members chose not to submit forms is not reflective of Plaintiff's or its counsel's efforts or of the result achieved. Plaintiff highly doubts that those claimants that received $500 due solely to the substantial efforts of Plaintiff and Plaintiff's counsel want to give the money back. Finally, AFGL's questioning of Ms. Trenbeath—as the *Amsterdam* settlement was not disclosed in AFGL's Rule 30(b)(6) notice, Ms. Trenbeath testified as to the years-old *Amsterdam* settlement in her individual capacity—regarding the *Amsterdam* settlement not only sought testimony that could very well violate the mediation privilege, the questioning was tailored for a lawyer, not a class representative.

Moreover, AFGL's counsel's agreement to essentially the same terms and procedures in the *Lary v. Rexall* case as were agreed upon in the *Amsterdam* case, including settling in Missouri and agreeing to A+W as class counsel, *see* Doc. 211 at 7, cuts the ground out from underneath its attack on the *Amsterdam* settlement. If such terms are acceptable to AFGL's counsel in *Lary v. Rexall,* they do not somehow become indicia of inadequacy in *Amsterdam*. The disingenuousness in AFGL's argument is stunning, as its claim that such terms are acceptable for TCPA defendants but not TCPA plaintiffs. (Doc. 215-1 at 6). According to AFGL, the *Lary v. Rexall* settlement,

which after attorney's fees and incentive awards were subtracted, created a fund of approximately $13,771,000 for class members' claims (with the unclaimed funds reverting to defendant), *see* Doc. 211 at 7, is somehow ethical for defendants but unethical for plaintiff and plaintiff's counsel, as apparently is the *Amsterdam* settlement. Again, these settlements were agreed to by the parties and their counsel in mediation and were approved by the court—they are ethical, they are substantial, and they were in the best interests of the class. If they were not, one would presume that Kelley Drye would not have agreed to such a settlement in *Lary* (and in any other case that had similar terms), nor would Amsterdam's counsel in the *Amsterdam* case, and the courts would not have approved such settlements. But the parties did agree, and the courts did approve those settlement terms as reasonable and adequate. As a practical matter, it is hard to see how making available approximately $13,771,000 (*Lary*), and $6,651,666 (*Amsterdam*), to the respective classes for violations of the TCPA is not in the respective class's best interests. The alternative to these substantial amounts is the uncertainty of summary judgment, trial, and appeal. The parties decided against those uncertain options. AFGL's second guessing of those settlements is unpersuasive. Contrary to AFGL's strident assertions, those choices by the plaintiffs and their counsel in each of those cases is indicia of adequacy and proper risk assessment.

## Conclusion

For the reasons stated herein, Plaintiff requests that the Court (i) deny AFGL's motion for leave to file a sur-reply, (ii) strike the proposed sur-reply from the record, and (iii) strike all arguments made at the hearing on class certification on May 19, 2021, referencing the sur-reply.

Respectfully submitted,

CAREER COUNSELING, INC. d/b/a SNELLING STAFFING SERVICES, individually and as the representative of a class of similarly-situated persons.

By: /s/ John G. Felder, Jr.
John G. Felder, Jr.
McGOWAN HOOD FELDER
1517 Hampton St.
Columbia, SC 29201
Telephone: 803-779-0100
Fax: 803-256-0702

Ryan M. Kelly (*admitted pro hac vice*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Facsimile: 847-368-1501

*Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 1, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                By: /s/ John G. Felder, Jr.
                   John G. Felder, Jr.