**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| Career Counseling, Inc. d/b/a Snelling Staffing Services, a South Carolina corporation, individually and as the representative of a class of similarly situated persons, | ) ) ) ) ) ) Civil Action No.: 3:16-cv-03013-JMC |
| Plaintiff, | ) |
| v. | ) **ORDER AND OPINION** |
| AmeriFactors Financial Group, LLC, and John Does 1–5, | ) ) ) |
| Defendants. | ) ) |

Plaintiff Career Counseling, Inc. d/b/a Snelling Staffing Services, on behalf of itself and all others similarly situated, filed the instant putative class action seeking damages and injunctive relief from Defendants AmeriFactors Financial Group, LLC and John Does 1–5 (collectively "Defendants") for alleged violations of the Telephone Consumer Protection Act ("TCPA") of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 U.S.C. § 227, and the regulations promulgated under the TCPA by the United States Federal Communications Commission ("FCC"). (ECF No. 70.)

This matter is before the court on Career Counseling's Motion for Summary Judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (ECF No. 233). Specifically, Career Counseling asserts that "there is no genuine issue of material fact that (1) the Fax [at issue] is an 'advertisement' under 47 U.S.C. § 227(a)(5); (2) Defendant [AmeriFactors] is the 'sender' of the Fax under 47 C.F.R. § 64.1200(f)(11); and (3) the Fax was sent to a 'telephone facsimile machine' using a 'telephone facsimile machine, computer, or other device,' in violation of 47 U.S.C. § 227(b)(1)(C)." (ECF No. 233 at 1–2.) AmeriFactors opposes the Motion arguing that it "should

be denied because the record here demonstrates that factual issues remain with respect to Plaintiff's TCPA claim, including whether (i) the Fax is even covered by the TCPA as an advertisement, (ii) AmeriFactors is the 'sender' of the Fax, and (iii) Plaintiff's claim is barred by equitable defenses." (ECF No. 237 at 5.)  For the reasons set forth below, the court **GRANTS** Career Counseling's Motion for Summary Judgment.  (ECF No. 233.)

## I.     RELEVANT BACKGROUND TO PENDING MOTION

A.     The TCPA and the JFPA

The TCPA prohibits the faxing of unsolicited advertisements without "prior express invitation or permission" from the recipient.  S. Rep. No. 102-178, at 12.  Congress' primary purpose in passing the TCPA was to protect the privacy interests of residential telephone subscribers and the public from bearing the cost of unwanted advertising.  *Id.* at 1; S. Rep. No. 109-76, at 3.  Congress was expressly concerned because "[j]unk faxes create costs for consumers (paper and toner) and disrupt their fax operations."  GAO@100, *Telecommunications: Weaknesses in Procedures and Performance Management Hinder Junk Fax Enforcement*, https://www.gao.gov/products/gao-06-425 (last visited July 15, 2021).

In 1992, the FCC released its interpretation of the TCPA, which established an exception for unsolicited advertisement faxes ("junk faxes") between parties with an established business relationship ("EBR").  S. Rep. No. 109-76, at 2.  The FCC relied on this interpretation until 2003, when it reevaluated and created a stricter standard for junk faxes.  *Id.* at 3.  Under this new standard, junk faxes could only be sent with prior express permission in the form of written consent from the receiver, and an EBR (which initially had no specified limit) could only be relied upon by the sender for eighteen (18) months after a purchase and three (3) months after an initial inquiry.  *Id.* at 4–5.

After this change, many petitions from businesses requested that the FCC return to its previous interpretation of the TCPA, citing efficiency purposes and the enormous cost of compliance with the new interpretation. *Id.* at 4. This caused the FCC to order a stay on these new rules until 2005. *Id.*

In response, Congress passed the JFPA in 2005, codifying the EBR exception to the ban on unsolicited advertising faxes, allowing those with a business relationship to bypass the written consent rule. S. Rep. No. 109-76, at 1. The JFPA also requires that senders of junk faxes provide notice of a recipient's ability to opt out of receiving any future faxes containing unsolicited advertisements.[1] *Id.*

As a result of the foregoing, the JFPA expressly prohibits the faxing of unsolicited advertisements. 47 U.S.C. § 227(b)(1)(C). The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The JFPA creates a private right of action for a person or entity to sue a fax sender that sends an unsolicited advertisement and allows recovery of either actual monetary loss or $500.00 in damages, whichever is greater, for each violation. *Id.* at

---

[1] Testimony in the JFPA legislative history outlined concerns about the prior written consent requirement from the FCC. For example, National Association of Realtors Broker Dave Feeken testified that not only would a written consent requirement be costly and time-consuming for businesses, but it would also go against the legislative intent of the TCPA, as both the House and the Senate considered and rejected an express written consent requirement for calls and faxes. *Junk Fax Bill: Hearing on S. 714 Before Comm. on S. Commerce, Sci., & Tourism*, 109th Cong. (2005) (Test. of Dave Feeken, 2005 WL 853591 (Apr. 13, 2005)). News-Register Publishing Company President Jon E. Bladine pointed out that the signed consent leaves open the threat of litigation for every small business. *Id.* (Test. of Jon Bladine, 2005 WL 853593 (Apr. 13, 2005).) Bladine explained that fax numbers change, sometimes people misfile forms, and miscommunications between companies happen. *Id.* Not only that, but companies could use a fax in bad faith to sue another company, hoping they do not have the requisite consent form. *Id.* "[I]f we've messed up that time," he asks, "will we pay, even though we know – and the recipient in all honesty knows – the issue isn't about the fax at all?" *Id.*

§ 227(b)(3).

B.     The Parties

Career Counseling is an employment staffing agency, which acts as a middleman between employers and prospective workers.  (ECF No. 197-7 at 4/27:6–13.[2])  AmeriFactors is an accounts receivable financing firm that engages in factoring.  (ECF No. 206-2 at 74/4:17–19.)  Factoring is a process in which AmeriFactors purchases a business's accounts receivable of unpaid invoices for a discounted price with the intention of collecting the full value of the unpaid invoices at a later date.  (ECF No. 206-2 at 74/4:17–23; ECF No. 197-4 at 4/6:12–7:4.)  Factoring is beneficial to businesses because it allows them to gain early access to cash prior to the payment of an invoice. (ECF No. 197-4 at 4/6:18–23.)

In June of 2016, AmeriFactors became interested in marketing by fax and, as a result, contracted with AdMax Marketing, a fax marketer.  (ECF No. 197-4 at 4/7:5–25.)  AmeriFactors' Vice President of Marketing Jeff Speiser worked with AdMax's operator Chad Komniey to identify businesses to target with a fax and the content of the fax AdMax would use.  (ECF No. 197-4 at 8/22:1–24:4)  According to Speiser, Komniey did not discuss with him the legality of sending advertisements by fax.[3]  (Id. at 11/34:17–36:6.)

On or about June 28, 2016, Career Counseling received the following unsolicited fax[4] (the "Fax") on its stand-alone fax machine[5]:

---

[2] The parties filed condensed transcripts on the electronic docket, with 4 pages of testimony on each page.  For citation purposes, the number before the slash is the ECF page number and the number after the slash is the transcript page number.

[3] Komniey testified that he did discuss the legality of the fax advertisement with Speiser.  (ECF No. 197-5 at 11/39:7–40:15.)

[4] The parties do not dispute that the communication was unsolicited.

[5] Elizabeth Trenbeath, the Franchise President of Career Counseling, testified that the fax was received on a stand-alone machine because it "receives paper" and "[t]he fax comes out [as] paper."  (ECF No. 211-4 at 11/36:10–16.)  Moreover, Trenbeath implied that Career Counseling did not use "electronic faxes or e-faxes."  (Id. at 36:17–20.)



**AMERIFACTORS®**
— FUNDING BUSINESS IS OUR BUSINESS —

Phone: (407) 566-1150
Fax: (407) 566-1250
fsudovsky@amerifactors.com

# Fax Cover

**To:** GINA MC CUEN          **From:** Frank Sudovsky

**Fax:** 8033593008          **Date:** 6/28/16

**RE:** Financing for SNELLING STAFFING SVC

AmeriFactors is ready to help your company with your financing needs. We have been in business since 1990, and have funded over $5 billion to U.S. businesses of all sizes.

Our application process is fast and easy, with 98% of all applicants approved. Bankruptcy and bad credit are okay. The services we offer are **not a loan** and there is **nothing to pay back**.

If you would like to learn more, call me at the number below, or fill out the form and fax it back to me at 407-557-3611.

Sincerely,

Frank Sudovsky
Senior Vice President of Business Development
407.566.1150
fsudovsky@amerifactors.com

*CALL ME TODAY AND SAVE $600 OFF OF YOUR CLOSING COSTS! 407-566-1150*

## Fill out this form and fax to: (407) 557-3611

Name: _____ Company : _____

Email: _____ Phone: _____

**AmeriFactors is a wholly owned subsidiary of Gulf Coast Bank, Member FDIC**

If you would like to be removed from our contact list, just dial 888-879-1777 and enter fax #. Thank you.

(ECF Nos. 70 at 3 ¶ 13, 70-1 at 2, 197-8 at 3 ¶ 6.)

On September 2, 2016, Career Counseling filed a putative Class Action Complaint in this court alleging violation of the TCPA.[6] (ECF No. 1 at 8 ¶ 27–13 ¶ 36.) On October 28, 2016, AmeriFactors filed a Motion to Dismiss. (ECF No. 29.) After the parties responded and replied to the Motion to Dismiss (ECF Nos. 43, 47), the court entered an Order that granted AmeriFactors'

---

[6] Career Counseling asserted that similar unsolicited faxes were sent by or on behalf of AmeriFactors to 58,945 other recipients. (*E.g.*, ECF No. 197-13 at 15 ¶¶ 43, 44.)

Motion to Dismiss pursuant to Rule 12(b)(1) and dismissed the Class Action Complaint without prejudice. (ECF No. 61 at 10.) After receiving leave from the court (*see* ECF No. 67), Career Counseling filed a First Amended Class Action Complaint on November 28, 2017, alleging revised class claims for violation of the TCPA. (*See* ECF No. 70.) AmeriFactors then filed a Motion to Dismiss (ECF No. 72) on December 21, 2017, and a Motion to Stay Litigation Pending Resolution of Petition Before the FCC (ECF No. 76) on February 2, 2018.[7] On September 28, 2018, the court granted the stay, but denied the Motion to Dismiss with leave to refile. (ECF No. 88.) The court subsequently extended the stay twice. (ECF Nos. 92, 96.)

In response to the petition by AmeriFactors asking the FCC "to clarify that faxes sent to 'online fax services' are not faxes sent to 'telephone facsimile machines,'" the Consumer and Government Affairs Bureau[8] ("CGAB") issued a declaratory ruling on December 9, 2019, finding that an online fax service that receives faxes "sent as email over the Internet" is not protected by the TCPA. *See AmeriFactors Fin. Grp., LLC*, CG Docket Nos. 02-278, 05-338, DA 19-1247, 2019 WL 6712128 (CGAB Dec. 9, 2019) (Pet. for Expedited Declaratory Ruling). Specifically, the CGAB found in relevant part:

> By this declaratory ruling, we make clear that an online fax service that effectively receives faxes 'sent as an email over the internet' and is not itself 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper' is not a 'telephone facsimile machine' and thus falls outside the scope of the statutory prohibition.

---

[7] AmeriFactors hoped to stay the matter until (1) the court ruled on the pending Motion to Dismiss and (2) the FCC took final agency action on AmeriFactors' pending petition for declaratory relief. (ECF No. 76 at 1.)

[8] "The Consumer and Governmental Affairs Bureau develops and implements the FCC's consumer policies and serves as the agency's connection to the American consumer." *FCC*, https://www.fcc.gov/consumer-governmental-affairs (last visited June 25, 2021). The Consumer and Governmental Affairs Bureau "serve[s] as the public face of the commission through outreach and education, as well as through our consumer center, which is responsible for responding to consumer inquiries and complaints." *Id.* at https://www.fcc.gov/general/consumer-and-governmental-affairs-bureau (last visited June 25, 2021).

*AmeriFactors Fin. Grp., LLC*, 2019 WL 6712128, at *1.

The court lifted the stay on January 8, 2020, but stayed the case again on April 16, 2020, after being informed by AmeriFactors that it had sent a Notice of Constitutional Challenge (ECF No. 120) to the Attorney General of the United States pursuant to Rule 5.1(a) of the Federal Rules of Civil Procedure drawing into question the constitutionality of the TCPA, as amended by the JFPA.    On May 18, 2020, the Government filed a response to AmeriFactors' Notice of Constitutional Challenge asserting that "intervention [wa]s premature prior to Defendants' filing[] a motion to dismiss on constitutional grounds."  (ECF No. 126 at 2.)

On July 15, 2020, AmeriFactors filed a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6).  (ECF No. 137.)  While AmeriFactors' Motion to Dismiss was pending, the CGAB on September 21, 2020, adopted and released a declaratory ruling on a petition filed by the law firm Akin Gump Strauss Hauer & Feld LLP (the "*Akin Gump Ruling*"), which held as follows:

> In this Declaratory Ruling, we clarify, consistent with Commission rules and precedent, that a fax broadcaster may be exclusively liable for TCPA violations where it engages in deception or fraud against the advertiser, such as securing an advertiser's business by falsely representing that the broadcaster has consumer consent for certain faxes.  Specifically, where the fax broadcaster engages in such conduct, it is the "sender" of the fax because it is acting contrary to the advertiser's interests, and thus not "on behalf of" the advertiser.

. . .

> [W]e clarify that the fax broadcaster, not the advertiser, is the sole "sender" of a fax for the purposes of the TCPA when it engages in conduct such as fraud or deception against an advertiser if such conduct leaves the advertiser unable to control the fax campaign or prevent TCPA violations (including cases in which such fraud or deception violates a fax broadcaster's contractual commitments).  The Commission has made clear that the "sender" of a fax advertisement in most cases is the advertiser, but not in all cases.

. . .

> We thus reiterate that where the fax broadcaster's deception or fraud leaves the

advertiser unaware of and unable to prevent the unlawful faxes, sole liability for violations should rest with the fax broadcaster because the unauthorized faxes cannot reasonably be considered to be "on behalf of" the advertiser. Where the fax broadcaster's misconduct effectively defeats any measures the advertiser took or could have taken to comply with the law, the faxes cannot be considered sent "on [the advertiser's] behalf" as contemplated by our rules. And that decision is consistent with the federal common law of agency to the extent that it applies here. Under such agency principles, a seller of goods or services may not be vicariously liable for the misconduct of its alleged agent (*i.e.*, a fax broadcaster) where the fax broadcaster's fraudulent or deceptive conduct makes clear that the seller did not expressly or implicitly authorize it to commit the acts that violated the TCPA.

*In the Matter of Akin Gump Strauss Hauer & Feld LLP Petition for Expedited Clarification or Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, Nos. 02-278, 05-338, 2020 WL 5747205, at *2–3 (Sept. 21, 2020).

Thereafter, the court considered the parties' extensive briefing (*see* ECF Nos. 139, 147, 164, 165, 166, 169, 170), and denied AmeriFactors' Motion to Dismiss on December 22, 2020. (ECF No. 171.) AmeriFactors answered the Amended Complaint on January 5, 2021, expressly denying that it was "the sender of the subject facsimile message." (ECF No. 173 at 6 ¶ 5.) The parties then proceeded to engage in extensive discovery regarding the extent to which the facsimile at issue was sent to the putative class.

On March 16, 2021, Career Counseling filed a Motion for Class Certification, a Motion to Appoint Class Counsel, and a Motion to Appoint Class Representative pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rule 23 Motions"). (ECF No. 197.) On April 15, 2021, AmeriFactors filed a Memorandum of Law in Opposition to Motion for Class Certification, to which Career Counseling filed a Reply in Support of Its Motion for Class Certification on April 30, 2021. (ECF Nos. 206, 211.) After allowing the parties to present argument on Rule 23 Motions, the court entered an Order on July 16, 2021, denying all three (3) Rule 23 Motions. (ECF No. 229.) Consequently, Career Counseling filed the instant Motion for Summary Judgment on October 28, 2021. (ECF No. 233.)

## II.    JURISDICTION

This court has jurisdiction over Career Counseling's claim alleging violation of the TCPA via 28 U.S.C. § 1331, as it arises under the laws of the United States, and also via 47 U.S.C. § 227(b)(3), which empowers actions under the TCPA "in an appropriate court of th[e] State . . . ." *Id.  See also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386–87 (2012) ("Nothing in the text, structure, purpose, or legislative history of the TCPA calls for displacement of the federal-question jurisdiction U.S. district courts ordinarily have under 28 U.S.C. § 1331.").

## III.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).  In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Anderson*,

477 U.S. at 249.

## IV.     ANALYSIS

A.     The Parties' Arguments

Career Counseling moves for summary judgment arguing that "there is no genuine issue of material fact as to the elements of [its] claim: (1) the Fax is an 'advertisement' under 47 U.S.C. § 227(a)(5); (2) Defendant [AmeriFactors] is the 'sender' of the Fax under 47 C.F.R. § 64.1200(f)(11), where Defendant is both the person 'on whose behalf' the Fax was sent and the person whose 'goods or services' are advertised; and (3) the Fax was sent to a 'telephone facsimile machine' using a 'telephone facsimile machine, computer, or other device,' in violation of 47 U.S.C. § 227(b)(1)(C)." (ECF No. 233-1 at 5.)  Career Counseling further argues that "there is no genuine issue of material fact that Defendant [AmeriFactors] cannot carry its burden of proving as an affirmative defense either (1) that the Fax was sent with Plaintiff's 'prior express invitation or permission' under 47 U.S.C. § 227(a)(5); or (2) that Defendant [AmeriFactors] qualifies for the three-part statutory safe-harbor for faxes sent pursuant to an 'established business relationship,' 47 U.S.C. § 227(b)(1)(C)(i)–(iii)."  (ECF No. 233-1 at 5.)  Based on the foregoing, Career Counseling asserts that the court "should enter summary judgment for Plaintiff individually so Plaintiff may appeal the denial of class certification."  (*Id.*)

AmeriFactors opposes the Motion for Summary Judgment.  First, AmeriFactors argues that there is an issue of fact regarding whether the Fax is an advertisement under the TCPA because it was "offering to purchase–not sell" and "there were no representations as to the quality of the product or service at issue—nor could there be, as Plaintiff is the entity in possession of information related to the quality of its receivables."  (ECF No. 237 at 11.)  Next, citing to the *Akin Gump* Ruling, AmeriFactors argues that there is a question of fact regarding whether it is the sender of the Fax that violated the TCPA because "AdMax (i) misrepresented and omitted material

information and (ii) deprived AmeriFactors of its ability to control the transmission of the Fax."
(*Id.* at 14 (quoting 2020 WL 5747205, at *3 ¶ 11).)  Finally, AmeriFactors asserts that there are
questions of fact as to its defenses of unclean hands and waiver because "[a] reasonable juror could
conclude that, given Plaintiff's deliberate efforts to seek out TCPA violations, it would be unjust
to permit Plaintiff to now seek[] recovery, or alternatively, that Plaintiff waived the right to receive
compensation for statutory 'harm' that it essentially invited by failing to make an opt-out request."
(*Id.* at 17.)

B.     The Court's Review

Under the TCPA, it is unlawful for any person within the United States "to use any
telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine,
an unsolicited advertisement, . . . ."  47 U.S.C. § 227(b)(1)(C).  The TCPA authorizes a private
right of action to (1) "enjoin such violation" of the Act, (2) "to recover for actual monetary loss
from such a violation, [and/]or to receive $500 in damages for each such violation."  *Id.* at §
227(b)(3).  At this summary judgment stage of the matter, the areas of the parties' dispute as to the
TCPA are (1) whether the Fax at issue was an advertisement, (2) whether AmeriFactors was a
sender, and (3) whether AmeriFactors' affirmative defenses of waiver and unclean hands are
applicable to Career Counseling's TCPA claims.  The court discusses each of these issues as
follows:

1.     Qualification of June 28, 2016 Fax as an Advertisement

"The determination of whether a fax is a 'advertisement' is a question of law for the court
to decide."  *Exclusively Cats Veterinary Hosp., P.C. v. M/A/R/C Research, LLC*, 444 F. Supp. 3d
775, 779 (E.D. Mich. 2020) (citing *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788
F.3d 218, 221 (6th Cir. 2015) ("So were these faxes advertisements? It is a question of law our

court has never addressed.")).  *See also Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882, 890 (6th Cir. 2020) ("Whether a fax constitutes an unsolicited advertisement is a question of law."); *United States v. Williams*, 733 F.3d 448, 452 (2d Cir. 2013) ("Interpretations of statutes are pure questions of law, . . . ."); *Bruce E. Katz, M.D., P.C. v. Focus Forward LLC*, 532 F. Supp. 3d 170, 175 (S.D.N.Y. 2021) ("Whether a fax is an "advertisement" is a question of law for the court.").  *But see New Concept Dental v. Dental Res. Sys., Inc.*, Case No. 17-CV-61411-MARRA, 2020 WL 3303077, at *3 (S.D. Fla. Mar. 17, 2020) ("The sole issue presented by DRS's motion is whether the December 2016 fax constituted an unsolicited 'advertisement' within the meaning of the TCPA.  The Court views this as a mixed question of law and fact." (citations omitted)).

Under the TCPA, an "advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services."  47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(1).  "[C]ourts have generally held that, to be an advertisement, a 'fax must promote goods or services to be bought or sold, and it should have profit as an aim.'"  *Bais Yaakov of Spring Valley v. ACT, Inc.*, 438 F. Supp. 3d 106, 109 (D. Mass. 2020) (quoting *Sandusky Wellness Ctr.*, 788 F.3d at 222).  "[M]essages that do not promote a commercial product or service . . . are not unsolicited advertisements under the TVPA."  *New Concept Dental*, 2020 WL 3303077, at *3 (quoting *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967 (May 3, 2006)).  In this regard, "four types of messages do not fall under the purview of the TCPA: (1) informational messages; (2) transactional messages; (3) non-commercial messages from non-profit organizations; and (4) non-advertisement messages with an incidental amount of advertising."  *Bais Yaakov*, 438 F. Supp. 3d at 109 (quoting *Physician's Healthsource, Inc. v. Vertex Pharm. Inc.*, 247 F. Supp. 3d 138, 150 (D. Mass. 2017)).  "A fax is informational if its 'primary purpose' is to communicate information, rather than to

promote a product." *New Concept Dental*, 2020 WL 3303077, at *3 (citing 71 Fed. Reg. at 25973). "Fa[xe]s that are primarily informational do not violate the TCPA." *Id.* (citation omitted). "[M]essages whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements for purposes of the TCPA's facsimile advertising rules." *Vinny's Landscaping, Inc. v. United Auto Credit Corp.*, 207 F. Supp. 3d 746, 750 (E.D. Mich. 2016) (quoting 71 Fed. Reg. at 25972).

Upon its review, the court observes that the literal language of the Fax at issue informed Career Counseling that AmeriFactors was in the financing business having "funded over $5 billion to U.S. businesses of all sizes." (ECF No. 70-1 at 2.) The Fax described AmeriFactors' "application process" as "fast and easy" with a "98%" approval and provided contact information to start that process. (*Id.*) While, at the same time, the Fax attempted to persuade immediate action by Plaintiff based on the handwritten message that stated by calling 407-566-1150 "today," Plaintiff could save "$600[.00] off of your closing costs!" (*Id.*) Moreover, the Fax expressly stated that AmeriFactors was offering factoring "services" that "are not a loan." (*Id.*) That the Fax was promoting services was confirmed by Speiser:

> Q.    The services we offer are not a loan and there's nothing to pay back. Is that
>       a true statement?
> A.    It is.
> Q.    Okay. So does Exhibit 5 speak to the services of AmeriFactors?
> A.    In general, yes.

(ECF No. 197-4 at 9/28:22–29:3.)

"*Sandusky* counsels that, in order to be an 'advertisement' under the TCPA, the fax on its face must propose that the sender and the recipient enter into some kind of commercial relationship, whether that be buying or selling a good or a service." *Lyngaas v. J. Reckner Assocs., Inc.*, C/A No. 2:17-CV-12867-TGB, 2018 WL 3634309, at *3 (E.D. Mich. July 31, 2018). In this case, the court finds that the Fax explicitly communicates the availability of AmeriFactors'

financial services to Plaintiff to help it meet its commercial needs. *E.g.*, *KHS Corp. v. Singer Fin. Corp.*, 376 F. Supp. 3d 524, 528 (E.D. Pa. Mar. 26, 2019) ("Financial services are a 'good or service' that can be the subject of a TCPA advertisement.") (citation omitted). Therefore, as a matter of law, the court finds that the Fax is an advertisement. *Id.* ("A fax is an advertisement as long as some portion of the fax advertises the commercial availability of a good or service.").

2.    <u>Status of AmeriFactors as a Sender under the TCPA</u>

"Under the TCPA, a 'sender' is 'the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.'" *Physicians Healthsource, Inc. v. Masimo Corp.*, Case No. SACV14-00001JVS(ADSx), 2020 WL 5260650, at *4 (C.D. Cal. July 13, 2020) (quoting 47 C.F.R. § 64.1200(f)(11)). *See also Crescent City Surgical Centre Operating Co., LLC v. Next Bio-Research Servs., LLC*, C/A Case No. 20-2369, 2021 WL 1985166, at *3 (E.D. La. May 17, 2021) ("In 2006, the FCC . . . defined the term 'sender' as 'the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.'" (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*; Junk Fax Prevention Act of 2005, 21 F.C.C. Rcd. 3787, 3822 (2006)). "The FCC's codification of this definition of 'sender' is in accord with its earlier uncodified interpretation: 'the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements, and that fax broadcasters are not liable for compliance with this rule.'" *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 634 (6th Cir. 2015) (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12407–08 (¶ 35) (1995)).

In this matter, AmeriFactors has both denied that it was "the sender of the subject facsimile message" and admitted that the Fax was sent by it or someone on its behalf.  (*See* ECF Nos. 173 at 6 ¶ 5, 197-17 at 6 ¶ 2.)  Because the court does not agree with AmeriFactors that the request that resulted in its admission sought a legal conclusion (*see* 197-17 at 6 ¶ 2 ("You or someone on your behalf sent Exhibit A to the telephone number 803-359-3008.")),[9] the court could easily find based on a plain reading of the definition of sender found in the Code of Federal Regulations that AmeriFactors' admission establishes it as the sender of the Fax as a matter of law.[10]  *See* Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.").  *Cf. Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." (citation omitted)); *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992) ("We have also held that Rule 36 admissions are conclusive for purposes of the litigation and are sufficient to support summary judgment . . . .  If at that point a party is served with a request for admission of a fact that it now knows to be true, it must admit that fact, even if that admission will gut its case and subject it to summary judgment.").  However, the court is reluctant to reach such a finding because the result is antithetical to the framework for Rule 36(b), which expressly grants the court

---

[9] Rule 36 allows a proper request for admission to relate to "facts, the application of law to fact, or opinions about either."  Fed. R. Civ. P. 36(a)(1)(A).  "[T]he mere presence of legal conclusions in a request for admission does not create a proper objection."  *Ducheseau v. Cornell Univ.*, C/A No. 08-4856, 2010 WL 4117753, at *3 (E.D. Pa. Oct. 19, 2010) (citation omitted).  "A request for admission that applies law to the facts is [] not objectionable."  *Id.* (citation omitted).  "[A] request for admission that calls for a legal conclusion that is one of the ultimate issues of the case is properly objectionable."  *Id.* (citation omitted).  *See also Leffler v. Creative Health Servs., Inc.*, C/A No. 16-1443, 2017 WL 4347610, at *5 (E.D. Pa. Sept. 29, 2017) ("Requests that seek legal conclusions are not allowed under Rule 36." (citing 7 James Wm. Moore, et al., *Moore's Federal Practice* § 36.10[6] & 36.10[8] (3d ed. 1997))).

[10] AmeriFactors asserts that its admission does not "support[] a conclusion that [it] admitted that it was the 'sender' of the Fax as a legal matter."  (ECF No. 237 at 15.)

discretion to "permit withdrawal or amendment [of the admission] if it would promote the presentation of the merits of the action . . . ." Fed. R. Civ. P. 36(b).

In response to its admission, AmeriFactors argues that because "the *Akin Gump* Ruling was decided after AmeriFactors responded to [Plaintiff's] Requests to Admit, and provided further clarity on the law with respect to this issue, the [c]ourt should reject any attempt to construe the response as an admission by AmeriFactors of any legal liability as the 'sender' of the Fax." (ECF No. 237 at 16.) AmeriFactors further argues that application of the *Akin Gump* Ruling results in "questions of fact as to whether AdMax engaged in fraud or made misrepresentations when it sent the Fax that deprived AmeriFactors of its ability to control the Fax transmission, thereby making AdMax the exclusive 'sender' under the law."[11]    (ECF No. 237 at 14.)   In support of these

_____

[11] As a side note, the court observes that precedent from the United States Court of Appeals for the Fourth Circuit  holds that "defendants must satisfy Rule 9(b) when they plead affirmative defenses sounding in fraud." *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 704 (4th Cir. 2018). "The Rule 9(b) standard requires a party to, 'at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.' These facts are often 'referred to as the who, what, when, where, and how of the alleged fraud.''" *Bakery & Confectionary*, 888 F.3d at 705 (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). In its Answer, AmeriFactors simply raised the affirmative defense that Plaintiff's TCPA claim fails because "AmeriFactors is not the sender of the subject facsimile message." (ECF No. 173 at 6 ¶ 5.) AmeriFactors did not reference in its pleading either the *Akin Gump* Ruling or the alleged fraud committed by AdMax Marketing. AmeriFactors' affirmative defense based on the *Akin Gump* Ruling sounded in fraud and had to be pleaded with particularity required by Rule 9(b), which was not done by AmeriFactors. "Although it is indisputably the general rule that a party's failure to raise an affirmative defense in the appropriate pleading results in waiver, . . . absent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999) (internal and external citations omitted) (citing, *e.g.*, *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993) (asserting that an affirmative defense may be raised in response to summary judgment motion)).   The court observes that Plaintiff has not asserted prejudice or unfair surprise and the record does not appear to support such finding. *See, e.g.*, *id.* at 613 ("Brinkley had ample opportunity to respond to HRC's summary judgment motion in which it initially raised the 'factor-other-than-sex' defense. As a result, we conclude that Brinkley was not unfairly surprised or prejudiced by HRC's delay in raising its affirmative defense; the district court did not err in considering it.").

arguments, AmeriFactors specifies that differences in testimony between Speiser and Komniey require credibility determinations that create factual questions as to whether "AdMax made misrepresentations or omitted material facts to AmeriFactors, including securing its business by falsely suggesting that its practices were compliant with all relevant laws." (*Id.* at 15.) In this regard, AmeriFactors asserts that "AdMax held itself out as the expert with respect to fax transmissions and guided AmeriFactors with respect to the legality of the Fax" and it "reasonably relied on AdMax's and Mr. Komniey's representation that they had such expertise and would guide AmeriFactors to satisfy legal requirements." (*Id.* at 14.)

Since CGAB released and adopted the *Akin Gump* Ruling on September 21, 2020, it does not appear that any court has had the opportunity to interpret its effect on a pending TCPA action. Career Counseling argues that the *Akin Gump* Ruling is inapplicable to this case because it neither is a final ruling nor is subject to retroactive application. (ECF No. 238 at 15 (citing 28 U.S.C. § 2342(1); *Lyngaas v. Curaden AG*, 992 F.3d 412, 427 (6th Cir. 2021)).) This argument is not persuasive because the FCC could have stayed the *Akin Gump* Ruling under 47 C.F.R. § 1.102(2), but has not, and the CGAB expressly states that the *Akin Gump* Ruling is a clarification consistent with existing FCC rules and precedent "that a fax broadcaster may be exclusively liable for TCPA violations where it engages in deception or fraud against the advertiser, . . . ." *Akin Gump*, 2020 WL 5747205, at *2 ¶ 9.

Substantively, in its attempt to survive summary judgment, the court observes that AmeriFactors failed to set forth any elements of an affirmative defense relying on the fraud/deception example set forth in the *Akin Gump* Ruling. Upon its review, the court observes that the following elements establish fraud: "(1) a representation; (2) its falsity; (3) its materiality; (4) knowledge of its falsity or a reckless disregard for its truth or falsity; (5) intent that the plaintiff

act upon the representation; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Williams v. Quest Diagnostics, Inc.*, 353 F. Supp. 3d 432, 446 (D.S.C. 2018) (quoting *McLaughlin v. Williams*, 379 S.C. 451, 665 S.E.2d 667, 670 (S.C. App. 2008))).[12]

In arguing that there was an issue of fact as to its fraud-based affirmative defense, AmeriFactors primarily relies on the testimony of Speiser. (*See* ECF No. 237 at 14–15.) After its review of Speiser's testimony, the court agrees with Career Counseling that the record does not create an issue of material fact regarding whether Komniey made false statements of material fact. More specifically, the entirety of Speiser's relevant testimony does not establish how any statement made by Komniey was materially false as his disclosure was severely lacking:[13]

> Q.    Did you speak to anyone other than Mr. Komniey at AdMax?
> A.    No.

(ECF No. 197-4 at 6/15:16–18.)

> Q.    And did you instruct Mr. Komniey to send an advertisement to that list?
> MS. SMITH: Objection to form.
> A.    What do you mean by "advertisement?"
> Q.    Well, I'll show it to you.  If you look at Exhibit 5.  Did you instruct Mr. Komniey to send Exhibit 5 to the of list of fax numbers from the SIC codes?
> A.    Correct. But there was also a disclaimer on the bottom that's not on this

---

[12] Although fraud is defined in federal common law, claims pursuant to the TCPA do not appear to require the application of federal common law. *See U.S. ex. rel. Badr v. Triple Canopy, Inc.*, 950 F. Supp. 2d 888, 904 (E.D. Va. 2013) ("Under federal common law, fraud requires four elements: '(1) misrepresentation of a material fact; (2) intent to deceive; (3) justifiable reliance on the misrepresentation by the deceived party; and (4) injury to the party deceived.'" (quoting *Veridyne Corp. v. United States*, 105 Fed. Cl. 769, 795 (Fed. Cl. 2012))); *Ames-Ennis, Inc. v. Midlothian Ltd. P'ship*, 469 F. Supp. 939, 943 (D. Md. 1979) ("Federal common law is that rather narrow body of decisional law which is applied in instances where state law cannot supply the rule of decision and the federal courts are free to choose the appropriate rule . . . . [T]he courts have found it necessary to apply federal common law in cases of disputes between states, . . . in determining diversity among parties, . . . and where there exists a strong federal policy favoring uniformity of result."  (internal and external citations omitted)).

[13] The court observes that AmeriFactors did not assert, reference, or imply the existence of fraud by silence, or fraudulent concealment, and the court was not asked to determine the appropriateness of these defenses in a TCPA case.

version.

(*Id.* at 8/23:8–19.)

> Q.     And did you have a discussion with Mr. Komniey regarding why opt-out language was needed?
> A.      No.  It's typical on unsubscribe language in an email.  I'm equating it to that.
> Q.     Did you discuss with Mr. Komniey the legality of sending advertisements by fax?
> A.     No.

(*Id.* at 11/34:12–19.)

> Q.     Just so I'm clear, you've never had any discussions with Mr. Komniey about the legality of sending advertisements by fax?
> A.     Correct.
> Q.     You did have a conversation with him regarding the opt-out language, correct?
> A.     We did.

(*Id.* at 11/36:3–9.)

> Q.     Did Mr. Komniey ever tell you that there was a statute --
> A.     No.
> Q.     -- regarding the sending of advertisements by fax?
> A.     No.
> Q.     Did you ever review the website from AdMax marketing?
> A.     I believe that I did when I did the Google search.
> Q.     Did you ever review the frequently asked questions section of the website?
> A.     I don't know.

(*Id.* at 11/36:25–37:12.)

> Q.     Did he tell you that he was going to use a third-party broadcaster to send the faxes?
> A.     I can't recall.
> Q.     What was discussed with Mr. Komniey regarding the less than ten conversations?
> MS. SMITH:  Objection to form.  You can answer if you understand.
> A.     The services that he would provide and the cost for those services.

(*Id.* at 12/38:7–15.)

In light of the foregoing, the court finds that AmeriFactors fails to carry its burden of establishing an issue of fact as to the misrepresentation of material fact element of its affirmative

defense for fraud and, therefore, the fraud affirmative defense fails as a matter of law. *See Herdon v. Mass. Gen. Life Ins. Co.*, 28 F. Supp. 2d 379, 382 (W.D. Va. 1998) ("[I]f a defendant seeks to use an affirmative defense as a basis to resist a plaintiff's motion for summary judgment, the defendant must create at least a triable issue of fact as to the existence of each element of the defense." (citations omitted)).

3.    Application of AmeriFactors' Affirmative Defenses for Unclean Hands and Waiver

"TCPA claims are statutory tort claims." *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 WL 2861671, at *9 (E.D. Mo. July 5, 2017) (citing *Branham v. Isi Alarms, Inc.*, No. 12-CV-1012, 2013 WL 4710588, at *6 (E.D.N.Y. Aug. 30, 2013)). However, "[t]he TCPA [also] provides for injunctive relief." *Exclusively Cats Veterinary Hosp., P.C. v. Pharm. Credit Corp.*, No. 13-cv-14376, 2014 WL 4715532, at *4 (E.D. Mich. Sept. 22, 2014) (citing 47 U.S.C. § 227(b)(3)(A)).

In the First Amended Complaint, Career Counseling sought: "(i) injunctive relief enjoining Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act." In its Answer, AmeriFactors expressly asserted that Career Counseling's claims "are barred by the doctrines of . . . unclean hands and waiver." (ECF No. 173 at 7 ¶ 16.)

Upon consideration of the foregoing, the court observes that waiver and unclean hands are equitable defenses. *E.g.*, *Simms v. Chase Student Loan Servicing, LLC*, No. 4:08CV01480 ERW, 2009 WL 943552, at *1 n.2 (E.D. Mo. Apr. 6, 2009). When Career Counseling filed its First Amended Complaint, it sought injunctive relief, in addition to trebled statutory damages.

However, in its Motion for Summary Judgment, Career Counseling only seeks the statutory damages amount of $500.00 and appears to have withdrawn its claims for injunctive relief and treble damages.  (*See* ECF No. 238 at 18 n.6 ("Although the TCPA allows the Court to enter injunctive relief, 47 U.S.C. § 227(b)(3), Plaintiff has not sought injunctive relief in this Motion, limiting its request to the automatic $500 per violation on Plaintiff's individual claim." (referencing ECF No. 233 at 2 ¶ 6)).)  As a result of this withdrawal, the court finds that TCPA law in its current state does not support application of the equitable defenses of waiver and unclean hands to a claim of statutory damages under the TCPA.  *See, e.g.*, *Johnson v. Capital One Servs., LLC*, 2019 WL 4536998, at *6 (S.D. Fla. Sept. 19, 2019) ("[I]t is well settled in this Circuit that the TCPA is essentially a strict liability statute that does not require intent except when determining an award of treble damages . . . .  Moreover, the applicability of an equitable defense such as unclean hands to a TCPA claim is uncertain." (internal and external citations omitted)).  *Cf. Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 314 F. Supp. 2d 1094, 1103 (D. Kan. 2004) ("The TCPA is essentially a strict liability statute—even if Park erroneously faxed advertisements to recipients with whom it did not have an existing business relationship, Park may be held liable under the TCPA for its actions (albeit without treble damages).");  *Aaron v. Mahl*, 674 S.E.2d 482, 487 (S.C. 2009) ("The equitable doctrine of unclean hands, however, has no application to an action at law." (citation omitted)).

## V.     CONCLUSION

Upon careful consideration of the entire record and the parties' arguments, the court hereby **GRANTS** Plaintiff Career Counseling, Inc.'s Motion for Summary Judgment (ECF No. 233) and **AWARDS** it statutory damages of $500.00 for violation of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

January 31, 2022
Columbia, South Carolina